397 So.2d 494 (1981)
STATE of Louisiana
v.
Ronald TAUZIER, and Glen Tauzier.
No. 80-KA-2250.
Supreme Court of Louisiana.
April 6, 1981.
*497 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Marion B. Farmer, Dist. Atty., William R. Alford, Walter R. Reed, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
John A. Cvejanovich, Anderson, Toledano & Courtney, Covington, for defendants-appellants.
GULOTTA, Justice Ad Hoc.[*]
Defendants, two brothers, appeal from their convictions on three counts of attempted first degree murder arising out of the shooting of three law enforcement officers. Each defendant was sentenced to serve fifty years imprisonment at hard labor on each count, sentences to run concurrently.
While in the course of checking a shopping center at approximately 11:00 p.m. on September 6, 1979, a Slidell police officer became suspicious when he observed two persons hooking a boat and trailer to a carry-all van. As the officer confronted these individuals, the driver fired a gun at him and struck him in the right hand. The assailants then drove away, pulling the boat and trailer behind the van.
In response to the wounded officer's radioed request for assistance, two St. Tammany Parish deputy sheriffs shortly thereafter saw the van, boat and trailer and gave pursuit. In the course of the chase the officers attempted to apprehend the driver and passenger of the van, but were fired upon from the van with a "shotgun". Shots were exchanged, and the officers sustained injury when the police car's windows shattered.
In response to the deputies' call for assistance, a large number of police vehicles converged on the scene. The two occupants of the van were seen to leave the truck and enter the woods nearby. The area was cordoned off and after a systematic search Glen and Ronald Tauzier were found at approximately 7:00 a.m. the following morning in heavy underbrush. A shotgun inscribed with Ronald Tauzier's name and a pair of bolt cutters were recovered in the area. Several firearms were found in the truck. One of the deputy sheriffs identified Glen Tauzier as one of the persons wielding the gun, but the other deputy sheriff identified Ronald as the person who had a shotgun. The Slidell police officer who had been wounded in the parking lot identified Glen as the passenger and Ronald as the man who had fired the gun.
In seeking reversal, the Tauziers make several assignments of error, which we consider in the order presented. The State argues that only assignments of error two and five (the denial by the trial judge by defendants' request to substitute counsel and the improper introduction of a pair of bolt cutters) should be considered because no timely objections were raised in the trial court. According to the State, defendants cannot raise on appeal for the first time an issue not raised below. The State argues *498 also that the errors complained of are not such as are patent from the record and cannot be ascertained without the necessity of considering the evidence as set forth in LSA-C.Cr.P. art. 920. Nonetheless, we deem it preferable to consider all assignments raised in this case.

REQUEST FOR PRIVATE COUNSEL

(Assignment of Error No. 2)
In the first assignment defendants complain the trial judge erred in refusing to grant their request, made at a recess during jury selection, for counsel of their own choosing. In connection with this assignment of error, defendants claim the court appointed attorney failed to subpoena necessary witnesses and there existed irreconcilable differences between the attorney and the defendants. We find no error.
An attorney for the public defender's office was appointed to represent these defendants. Thereafter, they informed the court that they could afford private counsel and counsel of their own choosing, Dale Wilks, was substituted for the attorney furnished by the public defender's office. Midway through jury selection, the trial court called a recess to allow the sheriff time to gather additional talesman for the jury pool. At that time Glen Tauzier informed the court that he was dissatisfied with his attorney and requested time to secure other counsel. In denying defendants' request the judge noted that he did not wish to disrupt the trial for such a purpose.
In State v. Leggett, 363 So.2d 434, 436 (La.1978) this Court noted:
"Both the federal and state constitutions provide that the accused has the right to counsel of his own choosing to defend him on a criminal charge. However, this right does not permit arbitrary action which obstructs orderly procedures in the courts. State v. Dickerson, 353 So.2d 262 (La.1977) State v. Mackie, 352 So.2d 1297 (La.1977). Rather the right to choose one's attorney is a right to be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system. There is no constitutional right to make a new choice of counsel on the very date the trial is to begin, with the attendant necessity of a continuance and its disrupting implications to the orderly trial of cases. Once the trial day has arrived, the question of withdrawal of counsel rests largely within the discretion of the trial judge. State v. Cousin, 307 So.2d 326 (La.1975); State v. St. Amand, 274 So.2d 179 (La.1973). This court has frequently upheld the trial court's denial of motions for continuances or withdrawal of counsel made on the day of trial when defendant is dissatisfied with his present attorney but had ample opportunity to retain private counsel. State v. Anthony, 347 So.2d 483 (La. 1977); State v. Hegwood, 345 So.2d 1179 (La.1977); State v. Wiggins, 337 So.2d 1172 (La.1976); State v. Alexander, 334 So.2d 388 (La.1976); State v. Austin, 258 La. 273, 246 So.2d 12 (1971)."
Wilks was retained as defendants' joint counsel in January, 1980. On the day of trial some three months later, however, defendant Glen Tauzier moved for new and separate counsel. Under the circumstances, it does not appear that the trial court abused its discretion in denying defendants' request. Glen had ample time prior to trial to secure individual counsel. Moreover, the record demonstrates Wilks' adequate ability and diligence in preparation of the defense. Furthermore, the timing of the request would have had a dilatory effect upon an ongoing trial.
This assignment is without merit.

SUPPLEMENTING VENIRE WITH BYSTANDERS

(Assignment of Error No. 3)
In the next assignment of error, defendant contends the trial judge erred in allowing the sheriff to supplement the petit jury venire by gathering people from courthouse bystanders. Employing this method, six jurors and an alternate were impaneled, completing jury selection.
*499 Defendants complain that selection of jurors from courthouse bystanders is unauthorized and results in an unrepresentative jury venire. The procedure utilized below, however, is specifically provided for by LSA-C.Cr.P. art. 785(D) which provides:
"D. In parishes other than Orleans, the judge may order the summoning of tales jurors from among the bystanders or persons in or about the courthouse, in place of the drawing of tales jurors."
Furthermore, in State v. Drew, 360 So.2d 500 (La.1978), this Court found that this method of selection is not per se violative of the accused's right to trial by a jury representing a fair cross-section of the community. See also, State v. Monk, 315 So.2d 727 (La.1975).
This assignment is without merit.

QUALIFICATIONS OF JURORS

(Assignment of Error No. 4)
Defendants also complain that the trial court erred in not ascertaining that the six members of the jury, chosen from among the courthouse bystanders, met the qualification requirements of LSA-C.Cr.P. art. 401 which provides:
"In order to qualify to serve as a juror, a person must:
(1) Be a citizen of the United States and of this state who has resided within the parish in which he is to serve as a juror [in the instant case, St. Tammany] for at least one year immediately preceding his jury service;
(2) Be at least eighteen years of age;
(3) Be able to read, writ and speak the English language;
(4) Not be under interdiction, or incapable of serving as a juror because of mental or physical infirmity; and
(5) Not be under indictment for a felony, nor have been convicted of a felony for which he has not been pardoned."
In State v. Baxter, 357 So.2d 271, 274 (La.1978) this Court stated:
"The rule which has long been recognized by this Court is that in order for a defendant to avail himself of the lack of qualification of a juror, it must be made to appear that the disqualification of the juror was not known to defendant, or his counsel, when the juror was accepted by him and could not then have been ascertained by due diligence; and it must be made to appear that such diligence was exercised by an examination of the juror, on his voir dire, touching his qualifications, and that he answered falsely. State v. Hall, 255 La. 854, 233 So.2d 541 (1970); State v. Lewis, 161 La. 696, 109 So. 391 (1926); State v. Holbrook, 153 La. 1025, 97 So. 27 (1923); State v. Nash, 45 La.Ann. 1137, 13 So. 732 (1893)."
Furthermore, we held in State v. Collins, 359 So.2d 174 (La.1978) that an allegation concerning the competency of a juror is tardy when first raised after the verdict. Although it appears that defendants waived their arguments by their failure to make a timely objection under LSA-C.Cr.P. Art. 841,[1] or by their failure to show that any particular juror was unqualified and whose disqualification was not discovered, nevertheless, we deem it advisable to consider the transcript of voir dire of the "courthouse bystander" jurors. We find no indication that these jurors did not meet the qualifications established by LSA-C.Cr.P. Art. 401.
Although all of the prospective jurors were not questioned specifically on all of the requirements of Article 401, the record discloses specific information relating to the jurors. Galatas indicated that she was 35 years old, a resident of Slidell in St. Tammany Parish, and did not remember reading about the case, indicating that she might be *500 capable of reading English. Davis stated that she was 25 years old, a resident of Covington in St. Tammany, and a librarian, indicating an ability to read English. Clark stated that she was 49, a resident of Mandeville in St. Tammany, and employed as a "C-1, P.A.T.," an apparently technical-related position, at a hospital, indicating an ability to read English. Rivers stated that she was 23 years old, a resident of Sun in St. Tammany, and a beauty school student, perhaps indicating an ability to read. Parker revealed that she was 23 years old, a resident of Bush in St. Tammany, and employed by an oral surgeon, indicating English literacy. Stanford stated that she was 49, lived six miles south of Covington in St. Tammany, and "usually reads the paper." Alternate Porter revealed only that she was 57 years old. No juror revealed a mental or physical infirmity rendering her incapable of jury service. Nor was there any indication that these jurors were under indictment or were convicted felons.
In the absence of a specific showing that a particular juror did not meet the requirements set forth in the Code, we find no merit to defendants' broad contention that the jurors did not meet the qualifications. We find no merit to this assignment or error.

EVIDENCE OF OTHER OFFENSES

(Assignments of Error Nos. 8 and 9)
Next, defendants contend that reversible error was committed when evidence was admitted of other offenses charged without providing defendants with written notices. Defendants complain of testimony by a State's witness that the certificate of registration on the carry-all van had been switched and apparently had been obtained fraudulently. According to defendants, other crimes were referred to despite the fact that the State's answer to defendants discovery motion allegedly disavowed the intended use of such evidence.
The specific comments were made by the prosecutor and a state witness, Slidell police detective Jimmy Pendon, in the following testimony:
"Q. Did you find any registration papers for this Carry All?
A. We found several items of registration. One was from Louisiana. The Certificate of Registration from the State of Louisiana, the VIN number does not correspond with this VIN plate.
Q. What does that indicate to you, sir?
A. Either this plate has been switched or the papers have been obtained fraudulently.
Q. I see. And who isto whom is the vehicle registered, or was? According to those certificates, to whom was it registered?
A. Glenn Tauzier.
Q. Glenn Tauzier?
A. Yes, Glenn Tauzier, 3516 Laplace Street, Chalmette, Louisiana.
Q. Okay.
A. And also they have the registration form with this. Certificate of Title under the name of Glenn Tauzier, a Texas registration for the same type of vehicle. Even the Texas registration, it's on a '69 International van. According to this, this does not jive with this plate either.
Q. Okay. So this would indicate to you that either the VIN plate on the Carry All had been switched or that the papers had been fraudulently obtained?
A. Right.
Q. Now, I'm going to show you what for purposes of identification I've marked as S-46 and S-47 and ask you if you recognize that?
A. This was also found in the vehicle. It's a syringe used for injecting some type of medication or drugs into the arms.
MR. WILKS:
Your Honor, I'm going to object to this. It's totally irrelevant.
MR. ALFORD:
It's a syringe
*501 MR. WILKS:
I don't see the purpose of any of this.
THE COURT:
Gentlemen, approach the bench.
(At this time a discussion was held at the bench.)"
Generally, evidence of extraneous offenses is inadmissible because of the prejudicial effect upon the accused's constitutional presumption of innocence. State v. Vernon, 385 So.2d 200 (La.1980); State v. Prieur, 277 So.2d 126 (La.1973); Pugh, Louisiana Evidence Law 30 (1974). Such evidence is excluded to ensure that a defendant will not be presumed guilty because of past offenses. State v. Vernon, supra.
LSA-C.Cr.P. Art. 770 provides inter alia
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;..."
LSA-C.Cr.P. Art. 771 provides:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury;
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
By their terms, Articles 770 and 771 both require that the aggrieved accused request a mistrial or admonishment before either remedy is warranted. Indeed, in State v. Baylis, 388 So.2d 713, 721 (La.1980) this Court dismissed a contention of "other crimes" prejudice noting:
"It is well settled that an irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence, and the party objecting made known to the court the action which he desired the court to take, or his objection to the action of the court, and the grounds therefor. C.Cr.P. 841. A new basis for an objection may not be raised for the first time on appeal. State v. Kelly, 375 So.2d 1344 (La.1979); State v. Quincy, 363 So.2d 647 (La.1978); State v. Williams, 343 So.2d 1026 (La.1977). Therefore, this contention must be deemed to have been waived by the defendant's failure to object to the absence of Prieur notice."
Accordingly, it appears that defendants waived the issue raised by these assignments by not stating the proper grounds for their objection, LSA-C.Cr.P. Art. 841, and by not requesting admonishment or a mistrial. LSA-C.Cr.P. Arts. 770 and 771.
In any event, the prejudice caused by the complained of comments was not so great as to warrant the "drastic remedy" of mistrial. See State v. Overton, 337 So.2d 1058 (La.1976). The prejudice caused was diminished by the fact that as part of their defense, defendants admitted, through the testimony of Ronald, that on the night of the offense they were attempting to arrange a purchase of marijuana for re-sale. (Defendants claimed that in the course of this transaction their truck was lost to two strangers who, supposedly, were the real assailants of the police.) Additionally, Ronald admitted that he formerly pled guilty to simple burglary and that he was convicted of obscenity. Furthermore, Ronald observed *502 that Glen "liked to smoke [marijuana] a little bit" and that they "started smoking [marijuana that evening]."Under the circumstances, references to the altered or stolen vehicle registration papers and a syringe do not appear to have so prejudiced defendants as to warrant mistrial.
These assignments are without merit.

DEPUTY SHERIFF'S REPORTS

(Assignment of Error No. 7)
In the next assignment of error, defendants complain that the trial court erred in not ordering the state to present them with copies of all reports prepared by state witness Steven Waldron, a deputy of the St. Tammany Parish Sheriff's Office. Defendants claim that they requested these documents but were presented with a copy of only one of the several such reports. The record reflects no specific request for copies of reports prepared by Waldron; a copy of at least one such report was delivered to the defense, however.
In State v. Franks, 363 So.2d 518, 520 (La.1978) this Court stated:
"Police reports are considered confidential and generally the state may not be compelled to produce them for inspection. State v. Banks, 341 So.2d 394 (La.1976); State v. Square, 257 La. 743, 244 So.2d 200 (La.1971). However, when an officer's testimony at trial is from his report rather than from his memory, that is, if the testimony is the product of past recollection recorded rather than present memory refreshed, the trial judge should require production of the report for defense inspection. State v. Tharp, 284 So.2d 536 (La.1973); State v. Foret, 315 So.2d 278 (La.1975). The same ruling should follow where it is shown that a witness has referred to his report or notes, with him on the stand, even though presumably only to refresh his memory while testifying. State v. Perkins, 310 So.2d 591 (La.1975)."
There is no showing that Waldron testified from any report or statement other than the one already in defense counsel's possession. Waldron did not read from any other statements nor refer to any while on the stand. Consequently, defendants were not entitled to the production of any statement save the one already in their possession.
This assignment is without merit.

DEMONSTRATIVE EVIDENCE

(Assignment of Error No. 5)
Defendants contend in the next assignment of error that the trial judge erred in admitting into evidence a pair of bolt cutters retrieved from their vehicle without first requiring that the State lay foundation for the evidence's introduction by showing that the pair of cutters matched the cut chain that presumably locked the boat.
The boat and trailer attached to defendants' vehicle was identified by Randy Davis as his property. He testified that on the night of the offense, he left this property chained to a pole in the Gibson's Discount Center parking lot. He also testified that he gave no one permission to move the boat on that night. A detective testified that the bolt cutters were found in the defendant's vehicle. The bolt cutters were thus relevant to an explanation of how the defendants came to have the boat and trailer in their possession.
The connexity of the bolt cutters to the case was adequately established. For demonstrative evidence to be admissible at trial, the State has the burden of establishing that it is more probable than not that the evidence is connected with the offense. State v. Boyd, 359 So.2d 931 (La.1978). This probability may be established by visual identification of a witness or by showing a chain of custody. Ultimately, the connexity of physical evidence is a factual matter for determination by the jury. State v. Henderson, 337 So.2d 204 (La.1976).
This assignment is without merit.

INADEQUACIES IN DISCOVERY

(Assignment of Error No. 1)
In this assignment of error, defendants claim the State inadequately answered *503 their discovery motion requesting copies of their criminal records in the custody of the State and the F.B.I., copies of fingerprint cards and photographs used in the investigation of the charged offenses, access to all physical evidence whether exculpatory or inculpatory and whether to be used at trial or not, and copies of all reports of scientific tests made in connection with the investigation of the case.[2] Defendants contend that the State's answer to their motion does not set forth the items in its possession and that the State's discovery production should be made part of the record.
In answer to the discovery motion, the State responded that it was not in possession of copies of any confessions by the defendants, any results or reports of physical and mental examinations or scientific tests or experiments, any statements of conspirators or codefendants, or any evidence or information of an exculpatory nature concerning either defendant. The State answered that it was not in possession of rap sheets or fingerprints concerning the defendants but would obtain them and furnish them to the defense, that it would allow the defense to inspect all tangible evidence at a time convenient to the defense prior to trial and that the remaining discovery requests were not applicable.
A minute entry for January 28, 1980 shows that at that time the State informed the defense that information requested would be delivered to the defendants as the information became available.
No showing has been made that physical evidence requested was not available for inspection by the defense or that inculpatory or exculpatory evidence was found but not introduced by the State. Although there are indications in the record that defendants had criminal records and that some ballistics tests were run on their weapons, any failure to provide defense counsel with rap sheets and copies of the scientific tests as requested is not prejudicial. In light of the overwhelming circumstantial and direct evidence, including eye-witness identification of the defendants as the assailants, any procedural inadequacy regarding discovery, even if shown, was harmless and did not violate defendants' due process rights.
This assignment is without merit.

SEQUESTRATION OF WITNESSES

(Assignment of Error No. 6)
Defendants complain by this assignment that the trial court erred in not ordering sequestration of the witnesses until after the State's opening statement. Additionally, they claim that the sequestration instruction was defective because the judge did not inform the witnesses not to discuss their testimony.
LSA-C.Cr.P. Art. 764 provides that upon its own motion the trial court may, and upon the request of the State or defendant, the court shall, order sequestration of the witnesses. Defense counsel did not request sequestration until after the State's opening statement; hence, the trial court's action was entirely proper.
The defendants are correct, however, in noting that the trial court's initial sequestration order was defective; the judge merely ordered the witnesses to wait in the hall, the state witnesses to one side, defense to the other.[3] Although such procedure does not comply with the requirements of LSA-C.Cr.P. Art. 764, there is no showing that any testimony was changed due to witness tampering or collusion. Nor does the record contain any defense objection to the sequestration instruction, despite the requirements of LSA-C.Cr.P. Art. 841.
This assignment is without merit.

*504 ILLNESS OF JUROR

(Assignment of Error No. 10)
Defendants further contend that the trial court erred in dismissing for illness juror Beachner, after she was sworn but before jury selection was concluded.
If a person is suffering from a physical infirmity rendering him incapable of serving as a juror, that person is not truly qualified to serve. See, LSA-C.Cr.P. Art. 401; State v. Carmouche, 141 La. 325, 75 So. 68 (1917).
LSA-C.Cr.P. Art. 796 provides:
"If it is discovered after a juror has been accepted and sworn, that he is incompetent to serve, the court may, at any time before the first witness is sworn, order the juror removed and the panel completed in the ordinary course."
In the instant case, after juror Beachner was accepted and sworn to the jury panel, the trial court was informed that she suffered from a disease rendering her incompetent to serve. She stated that on doctor's orders she was required to elevate her feet for two to three hours every day. The trial judge noted that it would be impossible to accommodate this requirement, given the seating arrangement in court. Consequently, the trial judge excused the juror from service. The trial court's action does not appear to have been such an abuse of discretion as to warrant reversal by this Court.
This assignment of error is without merit.

NUMBER OF JURORS

(Assignment of Error No. 11)
Defendants contend by this assignment that they were convicted by a jury composed of more jurors than the law allows. Specifically, the Tauziers complain that after the trial judge excused the juror thirteen jurors were selected plus an alternate. Because LSA-C.Cr.P. Art. 782 requires twelve jurors, selection of thirteen by the trial judge, according to defendants, constitutes reversible error.
Defendants herein were charged with attempted first degree murder. LSA-R.S. 14:27 and LSA-R.S. 14:30. First degree murder is a capital offense; however, the punishment for attempted first degree murder is imprisonment at hard labor for not more than fifty years. See, LSA-R.S. 14:30 and LSA-R.S. 14:27(D)(1). Offenses necessarily punishable by hard labor must be tried before a jury composed of twelve jurors, ten of whom must concur to render verdict. LSA-C.Cr.P. Art. 782. Accordingly, defendants were entitled to a twelve member jury with the requirement that ten must agree to convict or acquit.
The record in this case shows that thirteen persons were sworn as jurors; one alternate was also sworn. One of the thirteen, Beachner, was excused for valid medical reasons. This left twelve jurors and one alternate. The record shows that after rebuttal argument by the State, the trial judge charged the jury, released the alternate, and thus retired twelve to deliberate. A polling of the jury revealed a ten to two margin for conviction on each count as to each defendant.
This assignment is without merit.

PRO SE ASSIGNMENTS OF ERROR
In a brief filed pro se, the Tauziers raise several additional arguments, which we now consider.
In the first assignment of error, defendants contend that their rights were violated when they were not presented before a judge or magistrate until forty days after their arrest. Even though the prosecution and trial were not barred by the applicable prescriptive periods, defendants contend that the delay between arrest and presentment to a judge violated their rights under LSA-C.Cr.P. Art. 230.1, which provides that the sheriff must bring an arrestee before a judge within seventy-two hours of arrest for the purpose of appointment of counsel.
Defendants were arrested on the morning of September 7, 1979. The first indication of a judicial appearance was their arraignment forty-two days later on October 18, 1979. Nevertheless, even though the record *505 does not indicate compliance with LSA-C. Cr.P. Art. 230.1, we have held this issue moot where the defendant has been convicted and sentenced. See State v. Durio, 371 So.2d 1158 (La.1979). Moreover, there is no indication of any prejudice attributable to this delay. We therefore reject this assignment of error.
In a second assignment of error, defendants argue that they were denied their right to fair trial due to the ineffectiveness of their retained counsel. Specifically, they complain that their counsel's incompetency is revealed by his failure to file a motion to suppress, his failure to subpoena witnesses and evidence, his failure to make objections at trial, and his "undue haste."
We find no merit to this contention. We have stated in State v. Williamson, 389 So.2d 1328 (La.1980); State v. Malveaux, 371 So.2d 820 (La.1979); and, State v. Daniels, 346 So.2d 672 (La.1977) that this question is more properly raised by application for a writ of habeas corpus.
Defendants did file an application for writ of habeas corpus in which they assert that they were beaten by police officers, that proper counsel was not appointed to represent them, that they were denied a right to speedy trial, and generally that their incarceration is in violation of the United States Constitution. None of these complaints requires further discussion with the exception of their complaint of their denial of their right to speedy trial.
Concerning the right to speedy trial, this court has adopted the four-factor test articulated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). See State v. Perkins, 374 So.2d 1234 (La.1979). These factors include the length of the delay, the reasons for it, the assertion of the right to speedy trial, and prejudice to the defendants. State v. Nowell, 363 So.2d 523 (La.1978); State v. Bodley, 394 So.2d 584 (La.1981).
The alleged offenses were committed on September 6, 1979, and defendants were arrested the next day. They asserted their speedy trial rights in December, 1979. Trial was held in April, 1980. Under these circumstances, a delay of seven months from arrest to trial does not appear undue for the prosecution of six joint counts of first-degree murder. Furthermore, defendants have failed to articulate any prejudice resulting from this delay. We therefore find no merit to this assignment of error.
Defendants further argue that they were denied the right to a fair trial by the clerk of court's alleged failure to subpoena material and witnesses on their behalf. Defendants filed a pro se subpoena duces tecum on December 18, 1979 in which they requested copies of St. Tammany police abuse reports, photographs in the custody of the F.B.I., medical records from two hospitals, a bill of particulars, copies of any statements or reports made by the police and any witnesses, access to any real evidence, and copies of all news items and photographs pertaining to the defendants in the custody of certain St. Tammany Parish newspapers. In April, 1980 defense counsel requested various medical records, and it appears that the subpoenas requested by the attorney were issued. There is no evidence, however, that the pro se subpoena requests were honored.
LSA-C.Cr.P. Art. 731 provides that the court "shall" issue subpoenas upon the request of the defendant or the State. The court, however, may modify or vacate the subpoena if it is unreasonable or oppressive. LSA-C.Cr.P. Art. 732. The pro se subpoena request concerned material to which the defendants were not entitled: F.B.I., files, information already provided pursuant to discovery, or information related solely to defendants' civil rights claims against the police and the State. Under these circumstances, the trial court was within its rights to vacate the pro se requests. We reject, therefore, this assignment of error.
In a fifth pro se assignment of error, defendants complain that a member of the district attorney's secretarial staff, Susan Gill, was a member of the jury that convicted them. They claim that her occupation *506 was only discovered after trial on a tip from a fellow inmate. They further complain that one of the prosecuting attorneys spoke with a witness for the State during the course of the trial.
A review of the record reveals no juror named "Susan Gill." Under these circumstances, there is no showing of prejudice. Concerning the prosecuting attorney's speaking to witnesses in the hall, we find no impropriety or ground for reversal. See State v. Harris, 367 So.2d 322 (La.1979). Moreover, defendants again have failed to prove any resulting prejudice.
In a sixth pro se assignment of error, defendants claim the guilty verdict was contrary to the law and the evidence since the State did not present evidence upon which a reasonable trier of fact could have found every element of the charged defenses proved beyond a reasonable doubt. Defendants were convicted on three counts each of attempted first-degree murder.
The evidence adduced shows that Glen and Ronald Tauzier acted singly and in concert in such a manner as to indicate a specific intent to kill or inflict great harm upon three peace officers engaged in their lawful duties. Although there is some confusion as to which brother fired the weapon, they were principals to each other's attacks. See State v. Holmes, 388 So.2d 722 (La.1980). On this evidence, any rational trier of fact could find the essential elements of the crimes charged beyond a reasonable doubt. We therefore, find this assignment to be without merit.
Defendants finally complain that the prosecuting attorney knowingly suppressed evidence and thereby denied their rights to a fair trial.
A prosecutor is obliged to make available to the accused evidence in his possession that is clearly supportive of the accused's innocence, even in the absence of a request for it. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Reed, 378 So.2d 923 (La. 1979). Defendants have failed, however, to articulate the basis for their belief that the prosecutor suppressed evidence favorable to their case. Under these circumstances, this assignment is also without merit.
As we have previously stated, although some of the assignments of error on appeal may have been waived because of failure of objection, we nevertheless have treated them in this opinion and have disposed of all of the assignments of error complained of, whether or not raised in the trial below.
Finding no merit in any of the assignments of error raised, we affirm the jury verdict.
AFFIRMED
DENNIS, J., concurs.
NOTES
[*] Judges James C. Gulotta, John C. Boutall and Patrick M. Schott of the Court of Appeal, Fourth Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr. and Associate Justices Pascal F. Calogero, Jr., James L. Dennis and Jack Crozier Watson.
[1] LSA-C.Cr.P. Art. 841 reads as follows:

"Art. 841. Bill of exceptions unnecessary; objections required.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court and the grounds therefor.
The requirement of an objection shall not apply to the court's ruling on any written motion."
[2] LSA-C.Cr.P. Arts. 716-722 provide for discovery, by the defense from the State, of the defendant's statements, documents and tangible objects, reports of examinations and tests, evidence of other crimes, hearsay statements of co-conspirators, and confessions and inculpatory statements.
[3] Subsequently, however, the trial court correctly instructed the witnesses not to discuss their testimony during several trial recesses.