454 So.2d 1245 (1984)
STATE of Louisiana, Appellee,
v.
Michael R. BOSLEY, Appellant.
No. 16316-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
*1246 Jones & Jones by James Garland Smith, Monroe, for appellant.
Michael J. Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before PRICE, JASPER E. JONES and NORRIS, JJ.
NORRIS, Judge.
Defendant, Michael Bosley, appeals jury convictions of attempted manslaughter in violation of La.R.S. 14:31 and 27 and armed robbery in violation of La.R.S. 14:64 and respective concurrent sentences of five and a half years at hard labor and forty years at hard labor without benefit of parole, probation or suspension of sentence assigning three errors:
(1) The court erred in denying the defendant's motion for new trial in that the verdict of guilty of Attempted Manslaughter was contrary to the law and evidence;
(2) the court erred in imposing a forty (40) year sentence for Armed Robbery in that the sentence is excessive and it is grossly disproportionate to the severity of the crime; [and]
(3) the court erred in allowing the introduction of the gun into evidence where a proper foundation had not been established or chain of custody.

FACTS
At approximately 2:45 a.m. on Sunday, May 9, 1982, Deputy Jack Lynch was the duty deputy at the Ouachita Parish Jail Extension, a minimum security jail facility, also known as the "P-Farm." While seated at his desk in his office, he observed his office door open and a masked individual garbed in dark clothing enter armed with a .38 blue steel revolver. This intruder then pointed the gun at Lynch and told him that if Lynch moved, he would be killed. Thereafter, the intruder instructed Lynch to open the "store," a commissary located on the premises for the inmates' use. Lynch then obtained his keys and unlocked the store and the money box bolted to the *1247 wall inside the store. Thereafter, Lynch was instructed to open a closet located inside of the office in which inmates' personal belongings, such as wallets, jewelry, etc., are kept alphabetically in brown manila envelopes which he did. When Lynch told the intruder that there was nothing in the closet, the intruder replied that he knew that the inmates' personal belongings were kept within that closet. At the intruder's instruction, Lynch opened the closet and placed envelopes from certain of the slots into a pillow case provided by the intruder. The intruder then instructed Lynch to open the office of the director of the facility. When Lynch responded that he had no key, Lynch was told to open the safe located behind the closet door which Lynch did. The intruder then opened the door of the safe himself and removed two boxes which contained inmate work release checks, receipts from produce sales and a bag containing petty cash used for change at the produce stand where the inmates sell produce grown on the farm. Included among the items removed from the P-Farm were cash from the store, certain inmates' belongings contained in the envelopes, change and currency from the safe and the receipts contained in the safe.
Thereafter, the intruder went to a closet where he obtained a pair of leg irons which he ordered Lynch to fasten around his right wrist. He led Lynch to the front of the director's office where he searched Lynch and removed $4.00 from his wallet. After attempting to "cuff" Lynch at two other locations, the intruder finally cuffed Lynch to a water fountain located in the dining hall of the facility. The intruder left the dining hall. While he was gone, Lynch removed a gun from his left boot. A few minutes later, the intruder returned. As he was walking through the door, he observed the gun in Lynch's hand and in response fired a shot in Lynch's direction which lodged itself in a wall some 15 feet from Lynch. The shot was fired while the intruder was backing out of the door and pulling it shut. Lynch fired three shots at the intruder who thereafter hastily departed on foot from the facility.
Because the actions of the intruder clearly indicated that he was a person familiar with the layout and the organization of the facility, Lynch was convinced that the intruder was a former inmate. After deliberation, Lynch reported to those investigating the crimes, that his assailant was the defendant.
The defendant was later arrested, charged with attempted first degree murder and armed robbery, tried on both counts, found guilty of attempted manslaughter and armed robbery, and sentenced.

ASSIGNMENT OF ERROR NO. 1
In connection with this assignment, defendant argues that the verdict of attempted manslaughter was contrary to the law and evidence because the State failed to offer any evidence which showed that the defendant had a specific intent to kill Lynch. It is further argued that the circumstances under which defendant actually fired his gun do not lead to an inference that the defendant actively desired to kill Lynch because the defendant had adequately disguised himself, had immobolized Lynch by handcuffing him to the water fountain and had every opportunity to kill or harm the deputy during the robbery but failed to do so. This argument is unpersuasive.
La.R.S. 14:27 provides:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall *1248 be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years;
(2) If the offense so attempted is theft or receiving stolen things, and is not punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both. If the offense so attempted is theft or receiving stolen things, and is punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both;
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both.
La.R.S. 14:31 provides:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years.
Thus, the crime of attempted manslaughter is a crime which requires the presence of specific intent. See La.R.S. 14:27 and 31; State v. Butler, 322 So.2d 189 (La.1975); State v. Turner, 440 So.2d 834 (La.App.2d Cir.1983). Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10. Because specific intent is a state of mind, it need not be proven directly as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Sanders, 431 So.2d 833 (La.App.2d Cir.1983). Consequently, it is necessary that a determination be made as to whether the circumstances presented support the jury's finding that the defendant had the requisite specific intent to kill or inflict great bodily harm on Lynch when the defendant fired a shot in Lynch's direction.
A review of the sufficiency of the evidence to support a criminal conviction requires a determination of whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime [here specifically, the element of specific intent] to have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. *1249 2781, 61 L.Ed.2d 560 (1979); State v. Sanders, supra.
At trial, Deputy Lynch testified that his assailant, after leaving him handcuffed to the water fountain in the dining hall, returned to the dining hall. When he saw Lynch's gun, the defendant retreated through the door firing a shot in Lynch's direction as he left. The bullet was recovered from a wall located approximately 12 to 15 feet from the point where Lynch was secured. Additionally, the testimony of Barbara Roe, defendant's girlfriend, reveals that upon defendant's return to her residence immediately after the crime was committed he informed her that he had gone to the P-Farm and had chained the deputy to the water fountain after which the deputy had shot at the defendant and the defendant shot back.
When this evidence is construed in the light most favorable to the prosecution, it is clearly sufficient to satisfy a rational juror that the defendant acted with specific intent to kill or inflict great bodily harm when he discharged a lethal weapon aimed in the direction of Deputy Lynch who was cuffed to the water fountain. Compare State v. Mart, 419 So.2d 1216 (La.1982). See also and compare State in Interest of Jordan, 348 So.2d 697 (La.App. 1st Cir. 1977); State in Interest of Aaron, 405 So.2d 1194 (La.App. 1st Cir.1981); State v. Tauzier, 397 So.2d 494 (La.1981); State v. Temple, 394 So.2d 259 (La.1981); State v. Holmes, 388 So.2d 722 (La.1980).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In connection with this assignment, defendant argues that it was an abuse of discretion for the trial judge to impose a 40 year sentence without benefit of probation, parole or suspension of sentence for the armed robbery conviction and a five and one-half year sentence for the attempted manslaughter conviction and that the sentences were excessive and disproportionate.
Article I, § 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment. Although a sentence is within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). In imposing sentence, a trial judge must comply with the mandatory requirements of La.C.Cr.P. Art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and the factual bases therefor. State v. Jones, 381 So.2d 416 (La.1980). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Article 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant because the sentencing guidelines of Article 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983); State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983); State v. Sepulvado, supra. When Article 894.1 has been complied with, a sentence should not be set aside as excessive in the absence of a clear abuse of the wide discretion accorded a trial judge in the imposition of sentences within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983).
In sentencing this defendant, the sentencing judge who heard the evidence presented during the trial indicated that the pre-sentence investigation revealed that the defendant had a prior conviction in 1978 for simple burglary and a prior escape from the Ouachita Parish Jail. The judge also noted that subsequent to the commission of the instant offense that the defendant had been convicted in California of one count of grand theft and alluded to the circumstances surrounding the crimes for which the defendant had been found guilty and was before the court for sentencing. First noting that the defendant was not eligible for probation or suspension of sentence because of his prior criminal record, the sentencing judge was of the opinion that lesser sentences than the ones actually *1250 imposed would deprecate the seriousness of the instant offenses, particularly because of their brazen nature. The sentencing judge further opined that there was an undue risk that the defendant would commit other criminal acts because of his past criminal record and the commission of a subsequent offense. It was further found that the needed modification of the defendant's anti-social behavior could be provided most effectively by and the public's safety required a period of long term committment to an institution. This was noted to be particularly true because previous short term committments had proved ineffective in achieving those aims. In a statement of considerations filed of record, the sentencing judge indicated that no mitigating circumstances were found to be present.
Although the sentencing judge in this case articulated specific reasons for the sentences imposed, he did not articulate every circumstance contained in the applicable article. However, it is unnecessary that he list every aggravating and mitigating circumstance when the record reflects that he adequately considered these guidelines in particularizing the sentences to the defendant. State v. Vaughn, 378 So.2d 905 (La.1979). We conclude that the sentencing judge adequately complied with the requirements of Article 894.1.
Although the sentence imposed for the armed robbery conviction is within the lower half of the sentencing range of the applicable article, it is for a considerable period of time and is to be served without benefit of probation, parole or suspension of sentence. However, based on the particular facts of this case, it is affirmatively supported by this record and does not constitute an abuse of discretion. The extended period of imprisonment is not needless and purposeless but rather is imposed for the purpose of negating the defendant's opportunity to commit such crimes in the future. It is commensurate with, rather than disproportionate to the extreme severity of the defendant's offense. In light of this particular crime, it certainly does not shock our sense of justice.
Likewise, the concurrent sentence of five and one-half years for the attempted manslaughter conviction is supported by the record and does not constitute an abuse of discretion.
Accordingly, these sentences are not excessive and this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
In connection with this assignment, the defendant argues that it was error for the trial court to allow the state to introduce the gun subsequently proven to have been utilized in these crimes because there was an insufficient foundation laid and an incomplete chain of custody established prior to its introduction.
The gun in question came into the possession of Mrs. Lily Bosley Thompson, a cousin of the defendant when the defendant gave it to her for safekeeping. Not wanting to keep a gun in the house, she in turn gave the gun to Robert Powell, who without noting its serial number or inspecting it closely, shortly thereafter turned it over to the Ouachita Parish Sheriff's Office through Sgt. Worley. Sgt. Worley then gave the gun to Deputy Wellbrink who tagged it and placed it in an envelope which Worley signed. The gun was deposited with Linda Armstrong of the North Louisiana Crime Lab, who four days later released the gun to Emmett Jones, another employee of the crime lab in Shreveport. The gun was tested in Shreveport, determined to be the gun which fired the shot at Deputy Lynch and later returned by crime lab employees to Ms. Armstrong who placed it in the evidence locker where it remained until trial. The crux of defendant's argument is that because Powell testified that he did not inspect the gun or note its serial number that his failure to identify the exhibit at trial was fatal to its admissibility at trial.
This argument is also unpersuasive. In order to introduce demonstrative *1251 evidence at a trial it is sufficient if the foundation laid establishes that it is more probable than not that the object is one connected with the case. Lack of positive identification or of a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. See State v. Taylor, 422 So.2d 109 (La.1982); State v. Sam, 412 So.2d 1082 (La.1982); State v. Davis, 411 So.2d 434 (La.1982); State v. Paster, 373 So.2d 170 (La.1979).
Although Powell did not in fact positively identify the weapon at trial, his testimony combined with that of Ms. Bosley, Sgt. Worley, Deputy Wellbrink and all of the employees of the respectively involved crime labs, clearly established that more probably than not this gun was the one connected with the case. The evidence was properly identified and admitted.
This assignment is meritless.
For the foregoing reasons, the conviction and sentence of defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.