NORRIS, Judge.
The defendant, Gregory L. Means, pled guilty to armed robbery and to accessory after the fact of first degree murder. LSA-R.S. 14:64, 25. In exchange for these guilty pleas, the state dropped two other charges of accessory after the fact. On the charge of armed robbery, Means was sentenced to 25 years at hard labor without benefit of probation, parole or suspension of sentence. On the accessory charge, he was sentenced to five years at hard labor, consecutive to the armed robbery sentence. From these convictions and sentences he has appealed, urging that the sentences are excessive and improperly consecutive. For the reasons expressed, we affirm.
Means and two companions, Terrell Porter and Arthur Brown, walked up to a car that was standing in line at the drive-through window of a Wendy’s restaurant in north Shreveport. Intending to rob the driver, Porter was armed with a gun and a knife. Using the gun and threats of harm, the three forced their way into the car. Brown took the wheel and drove his companions and the victim to a pond some five miles away. After they arrived there, they robbed their victim. A struggle ensued in the car, and the victim succeeded in injuring Porter with his own pistol and escaping. Porter and Brown pursued him, caught him, and stabbed him to death. Means joined Porter and Brown in tying pieces of concrete to the victim’s body and tossing it into the pond. They then set fire to the ear.
Means now claims that his sentences, though within the statutory limits, are constitutionally excessive. LSA-Const. Art. I § 20; State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing judge must comply with the mandatory guidelines of LSA-C.Cr.P. art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and their factual bases. State v. Jones, 381 So.2d 416 (La.1980). It is axiomatic that the sentencing judge has great discretion in imposing sentences and we will not upset one absent *994 a clear abuse of this discretion. State v. Trahan, 425 So.2d 1222 (La.1983).
The sentencing judge followed the art. 894.1 guidelines comprehensively, item-by-item. By way of mitigating factors, the judge stated that Means may not have contemplated the full effect of the harm when he entered the criminal transaction, but he fully contemplated the threats and the robbery. The judge noted that Means was a follower, not a leader, in the crime. He also observed that Mean’s only prior conviction was for a misdemeanor, simple possession of marijuana. Finally, he considered Means’s claim that while out on bond, he had made his girlfriend pregnant and that imprisonment would place undue hardship on the girlfriend and the child. The judge also noted, however, that Means was unemployed and had established no record of ability to support them.
The judge also admitted a number of letters from Means’s mother, one of his old teachers and several preachers. These attested to his good character and begged for clemency. These letters may well have had some effect, as the judge sentenced Means to about one-fourth of the total exposure for armed robbery.
The other art. 894.1 factors, however, operated in favor of a long sentence. Means needed correctional treatment and a shorter sentence would definitely deprecate this serious offense. The harm done, a brutal murder, was not just serious but ultimate and irreversible. There can be no compensation to the victim. There was no provocation. Significantly, this crime resulted from circumstances that are likely to recur. Before this crime, Means and his friends had been tooling around a shopping mall, short on cash, and looking for a purse to snatch. Under these circumstances, the sentence was justified.
The judge also noted certain factual bases that affected the plea bargain. Means actively participated in the robbery but not in the death threats, the pursuit and the actual killing. Furthermore, Means was unarmed. He did, however, participate in the weighting and concealment of the body, thus unquestionably exposing him to accessory liability. We note this because of Means’s claim that his five-year sentence as an accessory is the maximum, and maximum sentences should be reserved for the worst crime and worst offender. First degree murder is the worst and most appalling crime. Given Means’s participation in the general criminal scheme, this maximum sentence was appropriate.
Means’s potential exposure for armed robbery was 99 years at hard labor without benefit of parole, probation or suspension of sentence. Thus his sentence of 25 years is only about one-fourth of his maximum exposure. The total sentence of 30 years is still under one-third of this total exposure, and there was a slight benefit by the plea bargain. Cf. State v. Smack, 425 So.2d 737 (La.1983). The sentences, though long, are commensurate with the gravity of these hideous crimes and do not shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Bosley, 454 So.2d 1245 (La.App.2d Cir.1984).
Means next contends that the imposition of consecutive sentences was a violation of LSA-C.Cr.P. art. 883, which provides in part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. * *
Means claims that both the charged offenses arose from the same act or transaction so he is entitled to a presumption of concurrent sentences. State v. Gage, 399 So.2d 1174 (La.1981). He also argues that “American theory and practice” mandate concurrent sentences for a defendant without previous criminal record and who poses no danger to society. State v. Underwood, 353 So.2d 1013 (La.1978). We first note that Means did indeed have a prior record. Next, we agree that there was a single *995 criminal motive, theft, that initiated the whole chain of grisly events. This sequence of crime, however, was not simultaneous; it did not occur in a fleeting moment. Between the armed robbery and the ultimate acts of concealment, Means stood by watching his companions grapple with the victim, chase him down like an animal, and cut him mercilessly to death. By withdrawing from this melee and passing the time on the side, Means isolated his two criminal acts from one another. We think this was sufficient to justify the sentencing judge in directing consecutive sentences.
The judge did not address any further remarks to the issue of consecutivity, but this was not necessary. State v. Nelson, 467 So.2d 1159 (La.App.2d Cir.1985); State v. Lewis, 445 So.2d 195 (La.App.3d Cir.1984), writ denied 446 So.2d 1231 (La.1984). It is sufficient for the judge to enunciate the appropriate factors and factual bases in conjunction with the general sentencing guidelines of art. 894.1 provided these justify the consecutive sentences. State v. Ashley, 463 So.2d 794 (La.App.2d Cir.1985). These factors justify the sentences.
We are sensitive to Means’s first felony status and to the character references who insist that he poses no danger to society. State v. Underwood, supra. These matters are outweighed, however, by the wilful participation in these hideous and senseless crimes. The judge did not err in imposing consecutive sentences.
For the reasons expressed, the convictions and sentences are affirmed.
AFFIRMED.