414 So.2d 711 (1982)
STATE of Louisiana
v.
William BARNES.
No. 81-KA-2327.
Supreme Court of Louisiana.
May 17, 1982.
Rehearing Denied June 18, 1982.
*712 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Stephen Little, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Samuel S. Dalton, Jefferson, for defendant-appellant.
FRED S. BOWES, Justice Pro Tem.[*]
The defendant, William Barnes, was convicted by a jury of first degree murder in violation of La.R.S. 14:30. He was sentenced to life imprisonment at hard labor, forty years of which were without the benefit of parole, probation or suspension of sentence. On appeal, defendant urges twelve assignments of error. Assignment of error number one was neither briefed nor argued, therefore it is considered abandoned.
On May 20, 1979, at approximately 1:00 p. m., Emanuel Phillips, Jr. received a fatal gunshot wound to the chest while he sat in his parked car at the Villa D'ames Apartments in Jefferson Parish. The bullet entered the left side of the victim's chest beneath the arm and passed through the lung into his heart. The window on the driver's side of the victim's car was shattered from the gunshot. Tommy Hollingsworth, a cab driver for Holly Cabs, had pulled into a driveway to the apartment complex when he heard a gunshot. Hollingsworth immediately looked up and saw *713 the defendant thrust his hand inside the window on the driver's side, while another man, subsequently identified as Junior Bazile, stood by the passenger door of the victim's car. Hollingsworth then heard another gunshot. The victim exited the passenger side door and either grabbed Bazile or was grabbed by Bazile. Bazile jerked away and stated, "You done shot the son-of-a-bitch." The defendant and Bazile then got into a Chrysler automobile and drove away, while Hollingsworth gave pursuit. Hollingsworth radioed for help on his dispatch radio as he followed the Chrysler, never losing sight of it.
When Officer Douglas Deauzat received a call over the police radio, relaying Hollingsworth's dispatch, he subsequently spotted the two vehicles heading south on Estalote. The Chrysler being driven by the defendant was stopped approximately five minutes later. Deauzat never lost sight of the cab or the Chrysler. He instructed the two men to get out of the car, place their hands on the roof, and spread their legs. The defendant had a difficult time getting in this position and Deauzat noticed that the defendant's left hand was bleeding. The defendant said that he thought he had been shot, but Deauzat believed that the injury looked more like a cut or a scrape. The murder weapon was never recovered and the witness, Hollingsworth, never actually saw the weapon itself.
Assignment of Error Numbers 2 and 3
By these assignments, defense counsel argues that the trial court erred in denying the defendant's motion for a new trial based on insufficient evidence to sustain a conviction for first degree murder.
A convicted defendant's attack on the sufficiency of the evidence is determined by whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Harveston, 389 So.2d 63 (La.1980).
The defendant was charged with first degree murder in violation of La.R.S. 14:30. Under this statute, as in effect at the time of the killing, the State was required to prove that the defendant had specific intent to kill or inflict great bodily harm when he killed the victim. When the evidence in this case is viewed in the light most favorable to the prosecution, it appears that the defendant fired one shot at the driver's side of the victim's car and then fired another shot from point-blank range at the victim. Hollingsworth's identification of the defendant, instead of Bazile, as the man who reached through the window on the driver's side, the coroner's opinion that the fatal bullet entered through the left side of the victim's chest, and the injury caused to the defendant's hand, all tend to prove beyond a reasonable doubt that the defendant fired the fatal gunshot and, under the circumstances, that he specifically intended to kill the victim.
This assignment is without merit.
Assignments of Error Numbers 3 and 4
By these assignments, defendant contends that the trial court erred in denying his motion for a mistrial based on hearsay statements by a State witness which were not properly disclosed to defense counsel in discovery. Defendant submits that Hollingsworth's testimony to the effect that he heard Bazile, immediately after the shooting, tell the defendant "You done shot the son-of-a-bitch" was an impermissible use of hearsay. He also alleges that the testimony was in direct contradiction to the State's answer to the Bill of Particulars.
Defense counsel objected to the testimony and, outside the presence of the jury, motioned for a mistrial, submitting that it was an impermissible use of hearsay and that the State failed to give proper notice that it intended to use the statement. The prosecutor argued that the statement constituted res gestae and that he had informed defense counsel of the existence of the statement. It was additionally argued by the State that the statement was admissible under the co-conspirator's exception to the exclusion of hearsay.
*714 Defense counsel then admitted that he was informed of the existence of the statement, but that a little girlas opposed to Hollingsworthwas the person who heard Bazile say this.
The trial court denied the defendant's motion, reasoning that any error caused by Hollingsworth's spontaneous hearsay declaration would be harmless given the overwhelming evidence of the defendant's guilt.
In our opinion, Bazile's statement, immediately after the shooting, constituted res gestae as defined in La.R.S. 15:447 and 15:448.[1] The record indicates that Bazile's statement was a spontaneous declaration made in conjunction with the killing. Therefore, the statement was admissible as part of the res gestae, even if testimony in court with regard to it was hearsay. State v. Kimble, 407 So.2d 693 (La.1981).
Additionally, there is no merit in the defendant's contention that he was not given proper notice of the State's intent to use the statement. Notice under La.C.Cr.P. Art. 768[2] is not required when the statement sought to be introduced forms a part of the res gestae. State v. Kimble, supra; State v. Lawson, 393 So.2d 1260 (La.1980); State v. Shelton, 377 So.2d 96 (La.1979). There was also no requirement that the State give notice under La.R.S. 15:455 and La.C.Cr.P. Art. 721[3] because the statements qualified for admission as res gestae under La.R.S. 15:447 and 15:448. Therefore, the State did not have to rely on the co-conspirator's exception to the exclusion of hearsay. Since, in any event, defense counsel conceded that he was informed of the statement, the State did not err in failing to give formal notice of its intent to use the statement.
These assignments lack merit.
Assignments of Error Numbers 5 and 12
By these assignments, defense counsel argues that the trial court erred in denying defendant's motion for a mistrial based on the withholding of exculpatory evidence from the defendant. Defense Counsel submits that the State's failure to disclose the exculpatory results of a neutron activation test, which was conducted on the defendant's hands, warranted a mistrial.
During pre-trial discovery, defense counsel requested the results of any tests or examinations which were conducted on the person or body of the defendant and whether any substance was obtained from such tests. In its answer, the State directed attention to its answer to another pre-trial discovery request which pertained to the autopsy performed on the victim. Defense counsel also made a general request for any exculpatory evidence.
During the course of trial, while Detective Steve Buras was under cross-examination, defense counsel became aware that *715 certain tests might have been performed on the person of the defendant. Defense counsel moved for a mistrial and specifically complained of not being informed that the State conducted a neutron activation test on the defendant's hands to detect the presence of gunpowder. He submitted that the test results were negative and therefore very exculpatory. The prosecutor admitted that there was an indication on his file that a neutron activation test was to be conducted, but he denied ever hearing of the results from these tests. He submitted that the results of the tests were unknown to him at the time he completed the answer to discovery and that he did not deliberately suppress exculpatory evidence. The trial court then deferred ruling on the defendant's motion for a mistrial and defense counsel proceeded with the cross-examination of Detective Buras.
Defense counsel never questioned Buras as to the results of the test. On cross-examination, Detective Buras admitted that a neutron activation test was conducted on the defendant to detect the presence of antimony and barium, two gases emitted when a gun is discharged. However, he never testified as to what the actual results of the test were. At no time did defense counsel request a recess to discuss the test or the strategy of the case with the defendant, in light of this newly-discovered evidence. The trial court denied the defendant's motion for a mistrial, citing State v. Pool, 361 So.2d 1202 (La.1978). The court found that the prosecutor inadvertently omitted references to the neutron activation test, that defense counsel was able to produce the results of the test to the jury during trial, and that the withholding of this evidence did only minimal damage in light of the other evidence against the defendant.
The Jefferson Parish Sheriff's office received a written report from the F.B.I., dated June 14, 1979, wherein it was indicated that the results of the neutron activation test were either inconclusive or negative. The report also stated that the discharged firearm may not have deposited any gunshot residues on the hand or that these residues, if deposited on the hand, could have been removed by washing or wiping before the specimens were obtained.
In State v. Falkins, 356 So.2d 415 (La. 1978), a case involving a request for specific exculpatory evidence, this court followed the United States Supreme Court test of whether the evidence created a reasonable doubt of guilt that did not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342. In light of the results of the neutron activation test in this case, it is unlikely that a reasonable doubt, which did not otherwise exist, would have been created in the minds of the jury. In fact, it is very doubtful that this evidence could be considered exculpatory, as defense counsel urges.
It is also important that defense counsel had ample opportunity to present this evidence to the jury. Instead, he chose not to question Detective Buras as to the test results during cross-examination. The defendant was also aware that such a test had been conducted on him, so it is questionable whether defense counsel was surprised at the existence of a neutron activation test. In light of these facts and the overwhelming evidence of guilt against the defendant, we feel the earlier disclosure of this evidence to the defendant would not, in any reasonable likelihood, have affected the judgment of the jury.
These assignments are without merit.
Assignments of Error Numbers 6, 7, 8, 9 and 10
By these assignments, defense counsel argues that the trial court erred in denying the defendant's Motion For A New Trial, Amended Motion For A New Trial, Motion In Arrest Of Judgment, Motion To Produce Grand Jury Testimony and Written Statements Of State Witness, Tommy Hollingsworth, and failing to grant an evidentiary hearing on the defendant's new trial motions. Defense counsel submits that he could have proved during an evidentiary hearing that Tommy Hollingsworth's grand jury testimony contained no reference to the statement, "You done shot the son-of-a-bitch", *716 allegedly made by Bazile immediately after the shooting. He contends that the defendant was deprived of due process of law by the trial court's refusal to allow him the opportunity to develop this critical impeaching evidence. Defense counsel further submits that the circumstances warranted an evidentiary hearing on the exculpatory value of the undisclosed neutron activation test.
As discussed in Assignment of Error Numbers 3 and 4, supra, we feel that Hollingsworth's testimony, which credited Bazile with saying "You done shot the son-of-a-bitch" was neither an impermissible use of hearsay, nor introduced in violation of the notice requirements under La.C.Cr.P. Art. 768. Likewise, the propriety of conducting an evidentiary hearing to determine the exculpatory value of the neutron activation test was discussed in Assignment of Error Number 5. The only part of defendant's argument which has not yet been addressed concerns his allegation that Hollingsworth did not testify at the grand jury hearing as to Bazile's inculpatory statement directed toward the defendant, i.e., "You done shot the son-of-a-bitch."
In State v. Prestridge, 399 So.2d 564 (La. 1981), this Court restated the rule concerning secrecy of grand jury testimony, as follows:
"This court has consistently held that a defendant is not entitled to production of a transcript of the secret grand jury proceedings against him. LSA-C.Cr.P. Art. 434; State v. Sheppard, [350 So.2d 615 (La.1977)] supra, State v. Williams, 310 So.2d 528 (La.1975). The transcript of grand jury proceedings may not be used at trial even in the conduct of cross-examination. The purpose of this rule is not to protect a defendant or witness at a subsequent trial, but to encourage the free disclosure of information about crime."
This Court has suggested that Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) may require the disclosure of grand jury testimony favorable to the defendant and material to guilt or punishment. State v. Ford, 375 So.2d 641 (La. 1979). In this case, however, we do not feel that the trial court erred in refusing to order the State to produce transcripts from the grand jury proceedings. The motion to produce the testimony was filed after trial and is, therefore, governed by the "reasonable doubt of guilt that did not otherwise exist" standard in United States v. Agurs, supra. The silence of Hollingsworth in front of the grand jury, with regard to the res gestae statement of Bazile, may have had some impeachment value for the defense. However, in light of the independent medical evidence and Hollingsworth's eye-witness testimony that the defendant thrust his hand into the car just prior to the second shot, we feel the omitted evidence did not create a reasonable doubt that did not otherwise exist. United States v. Agurs, supra; State v. Falkins, supra.
The trial court was also not required to conduct an evidentiary hearing on whether Hollingsworth previously credited Bazile with the res gestae statements. In reaching its conclusion, the trial court could have reasoned that even if defense counsel could have established what it alleged in these post-trial motions, a new trial still would not be warranted.
Accordingly, these assignments are without merit.
Assignment of Error Number 11
By this assignment, defendant contends that the trial court erred in appointing defense counsel as defendant's attorney because counsel had previously represented both defendant and his co-defendant. Defense counsel submits that since he had interviewed the co-defendant, Junior Bazile, and had advised Bazile not to testify under any circumstances, there was an inherent conflict of interest which deprived the defendant of effective assistance of counsel.
At no time before the defendant's trial or after his conviction did defense counsel argue that there was a definite conflict of interest which warranted his withdrawing from representing both defendants. A review of the record indicates that he appeared to be willing to represent either *717 client but wished to preserve some ground to appeal a ruling. A defendant must demonstrate that an actual conflict of interest adversely affected his lawyer's performance to show ineffective assistance of counsel. State v. Franklin, 400 So.2d 616 (La.1981). Such a demonstration would be more properly made in a habeas corpus proceeding. In any event, the present record does not appear to present such a conflict of interest.
This assignment is without merit.

DECREE
For the foregoing reasons, the defendant's conviction is affirmed.
DENNIS, J., concurs but would remand for a Brady-Agurs hearing.
NOTES
[*] Judges Fred S. Bowes and Nestor L. Currault, Jr. of the Court of Appeal, Fifth Circuit and Walter I. Lanier, Jr., of the Court of Appeal, First Circuit, participated in this decision as Associate Justices pro tempore, joined by Associate Justices Calogero, Dennis, Blanche and Lemmon.
[1] La.R.S. 15:447 provides:

Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
La.R.S. 15:448 provides:
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
[2] La.C.Cr.P. Art. 768 provides:

If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
[3] La.R.S. 15:455 provides:

Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established.
La.C.Cr.P. Art. 721 provides:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the state's intent to use hearsay statements of coconspirators pursuant to R.S. 15:455.