421 So.2d 864 (1982)
STATE of Louisiana
v.
Herman BILLIOT.
No. 82-KA-0210.
Supreme Court of Louisiana.
October 18, 1982.
Rehearings Denied November 19, 1982.
*865 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Patrick Leitz, William C. Credo, Asst. Dist. Attys., for plaintiff-appellee.
William Noland, Lawrence J. Boasso, New Orleans, for defendant-appellant.
R. M. DAVID WILLIAMS, Justice Pro Tem.[*]
This is an appeal from the conviction of defendant Herman Billiot, of second degree murder. Defendant was indicted and tried with one John O. Shilling on one count of first degree murder, a violation of La.R.S. 14:30, committed on or about February 20, 1981. They were tried together before a twelve member jury. Defendant Shilling, whose appeal, if any, is not presently before this court, was found guilty as charged and sentenced to life imprisonment. Defendant Billiot was found guilty of second degree murder and was later sentenced to the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. Defendant Billiot now urges five assignments of error. The principal issue *866 we are concerned with is whether the trial court erred in admitting the defendant's inculpatory statement absent the required statutory notice (La.C.Cr.P. art. 768).[1]
This case arises from a homicide committed by defendant Herman Billiot and a codefendant John O. Shilling in late February, 1981. Through the testimony of two female eyewitnesses, it was proven that Billiot, Shilling and another unidentified male were out on the town visiting various Gretna and Marrero, Louisiana, nightspots. Late in the evening they met with Pamela LeBlanc at one of these nightspots and still later met with Stephanie (Penny) Plaisance at another nightspot. This group went to yet another bar where Ms. LeBlanc met the victim, James Stache. After they had all consumed some unknown quantity of beer, the party of six left in Shilling's automobile traveling towards Lafitte, Louisiana. The unidentified male passed out in the car and remained unconscious for the remainder of the night. On the way to Lafitte, in the early pre-dawn hours, Shilling stopped his automobile twice, presumably so he and the others could answer the call of nature. The first place he stopped was too well lit and there were too many people nearby watching another car on fire. Shilling then drove down the road a little further and stopped a second time. Billiot, Shilling and the victim, with the help of the defendants got out of the car and walked about ten (10) feet from the side of the vehicle. Billiot and Shilling then began to beat and kick the victim, both pulling knives to cut and stab him. The defendants beat the victim senseless and robbed him of $30.00. Billiot and Shilling then returned to the others and drove away to Shilling's residence in Lafitte, leaving the victim for dead on the side of the road. Soon after arriving at his residence, Shilling and Billiot left the two women and returned to the scene of the initial attack to find Shilling's lost knife. When they arrived, they found the missing knife and the victim, still alive, trying to hitchhike.
The defendants put the victim into their automobile and drove a little further down the road to a more secluded spot. They dragged the victim from the back seat out to the edge of a bayou; each of them punching the victim in the throat, Billiot first, then Shilling, whereupon Shilling then slit the victim's throat with his knife; pushed his head under water and stood on him until the victim eventually drowned. The defendants returned to Shilling's residence, to pick up the two women and take them home, telling them how they had finished off the victim. Shilling also threatened the women with death if they told anyone about the killing. It is this statement of the details of the second attack on the victim, by Shilling, made to the women which forms the basis of Billiot's appeal.

ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO
Defendant Billiot contends the trial court erred in admitting his inculpatory statement absent advance notice as required by La.C.Cr.P. Art. 768. This article provides:
If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement. If it fails to do so, a confession or inculpatory statement shall not be admissible in evidence.
The state used the testimony of two witnesses to introduce inculpatory oral statements made by the defendants Billiot and Shilling. The first testimony complained of was:
"Q. Did Herman Billiot say anything?
A. He said that he punched him [the victim] once in the throat and then John [Shilling] took over." (R.Tr. p. 448)
This statement was made as the defendants returned to Shilling's trailer after having killed the victim. The evidence shows that the defendants started talking about what they had done before they got in the car to take the two witnesses home. The evidence shows that it was made voluntarily and without having been asked.
The record shows the state did not provide defendant Billiot with any notice of its *867 intent to use this statement allegedly made. Absent such notice, there are two exceptions, the doctrines of res gestae and statements against interest, which will excuse the lack of notice of intent to use an inculpatory statement.
The trial court ruled that the statement made by Billiot was admissible as part of the res gestae and that notice of intent to introduce the statement pursuant to Art. 768, was unnecessary.
The purpose of Art. 768, is to avoid surprise and to allow adequate time for preparation of a defense. State v. Thomason, 353 So.2d 235 (La.1977). A defendant should be given a fair opportunity to plan or present his defense in light of such extremely damaging evidence. State v. Turner, 337 So.2d 455 (La.1976). However, a defendant is not entitled to prior notice of his inculpatory statement, which is part of the testimony of a witness, where that statement is part of the res gestae. State v. Kimble, 407 So.2d 693 (La.1981); State v. Hennigan, 404 So.2d 222 (La.1981); State v. Lawson, 393 So.2d 1260 (La.1980). Defendant argues that the statements were made approximately an hour and a half after the homicide at a different location from the murder (R. Tr. p. 434, 501, 531). Therefore, the defendant maintains the statement does not form part of the res gestae. On the other hand, the state contends that in spite of the alleged one and one-half hour time interval, the record clearly indicates that these actions constituted one long tragic chain of events, without interruption and res gestae is applicable.
The amount of time that elapses between the statement and the occurrence of the crime is not the sole consideration of res gestae. The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime if the continuous chain of events is evident under the circumstances. La.R.S. 15:448; State v. Molinario, 383 So.2d 345 (La.1980); State v. Drew, 360 So.2d 500 (La.1978), cert, den., 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979), and cases cited therein.
It appears that the inculpatory statement was probably made within an hour after the crime was committed (R. Tr. p. 432 and 505). However, it does not appear that this statement should have been considered part of the res gestae. State v. Gautreaux, 377 So.2d 289 (La.1979). In Gautreaux, a statement by the defendant that he had killed the victim was made between 10 and 30 minutes after the killing was held not to be part of the res gestae, and was improperly admitted due to the failure of the state to provide the Article 768 notice of intent. We think, that in the instant case, where defendant's statement was made anytime up to an hour after the homicide, it does not amount to res gestae on these facts. However, we are inclined to admit the inculpatory statement, as harmless error, since the evidence of guilt is overwhelming.
We have held that where written notice is not provided under Article 768, the admission of evidence in an inculpatory statement is error; however, where there is overwhelming evidence of defendant's guilt, the error is harmless. State v. Smith, 401 So.2d 1179 (La.1981). So too, in Gautreaux, supra, we found the error to be harmless, in that Gautreaux's rights were not substantially prejudiced by the introduction of the inculpatory statement. The other evidence pointing to Gautreaux's guilt was clearly overwhelming.
Defense counsel does not explain what he would have done differently in presenting a defense had he known of the inculpatory statement by the defendant. It appears that there was overwhelming evidence against the defendant, even without the statement. The state, of course, had no direct evidence that when the defendant returned to the scene with Shilling he also participated in the final savage beating of the victim. The eyewitness accounts of Pamela LeBlanc and Stephanie Plaisance established, however, that defendant had participated in the first attack on the victim, stabbing him repeatedly and then bashing his head against the car. When Billiot and Shilling dropped the women off at the *868 trailer the defendants returned to the scene of the homicide to look for Shilling's lost knife. The female witnesses had already seen defendants beat, stab and bash the victim, now they saw Billiot leave and return with Shilling. Even without the inculpatory statement the other evidence is abundant. A rational fact finder could readily conclude from this evidence that defendant had the specific intent to kill or inflict great bodily harm upon the victim and was at least a principal to the actions of Shilling.
The second inculpatory statement allegedly made was introduced into testimony by the second female witness, Stephanie Plaisance. The statement introduced was that made by co-defendant John Shilling:
"Q. Then what happened?
A. They [John Shilling and Herman Billiot] took us to John's trailer and then John locked the phone up in the bedroom and told us that if we would leave that he would kill us and we didn't leave. Then him and Herman left and when they came back it was almost daylight and they took me home. He stopped at a gas station and then he pulled over to the side of the road and he wanted to cut my throat and Pam told him that he wasn't going to do that to me and then we left and him and Herman talked about what happened when they went back to get John's knife and he said that he cut the guy's Adam's apple out and he stabbed him in the heart and stepped on him underneath the water until he couldn't see no bubbles coming up and he was laughing like it was a joke and then Herman started laughing and they dropped me off about three blocks from my house...." (R.Tr. p. 501-502)
Defendant Shilling was notified of the state's intent to introduce this statement. For the reasons stated above, we find that this statement, while not res gestae, is harmless in light of all the other evidence which is indicative of Billiot's overwhelming guilt.
We will now consider defendant Billiot's argument that the trial court erred in allowing into evidence hearsay testimony concerning a co-defendant's inculpatory statements which tended to cast some degree of guilt on him. We note the passage alluded to in counsel's brief was one elicited from the witness in an examination pertaining to the admissibility, as a whole, of that witness's testimony. The passage was recorded while the jury was removed from the courtroom. (R.Tr. p. 429-437). An objection by defense counsel was made to the admissibility of such testimony which might inculpate his client, Billiot, but the objection was overruled.
Counsel further made a motion to limit the examination of the witness to subjects which did not inculpate co-defendant Billiot. This motion was granted and complied with by the state.
Defendant now argues that, to the extent that such testimony, which was excluded, implicated Billiot, it was inadmissible under Bruton v. United States, 391 U.S. 123, 124, 88 S.Ct. 1620, 1621, 20 L.Ed.2d 476 (1968). We find no merit in this contention.
The following statement is the passage actually made in front of the jury:
"Q. What did John O. Shilling tell you he did?
A. He told me he punched the guy in the throat and the guy was still breathing and he wouldn't go down and he took his knife and slit his throat and put his head under water and watched the bubbles come up and laughed about it.
Q. What kind of disposition did he have when he was telling you this, was he serious?
A. He was serious, but he thought it was funny. (R.Tr. p. 447-448)
It is obvious that no implication of Billiot was made by admitting this testimony, and it is evident that it was not improperly admitted under Bruton, supra.
None of the remaining assignments present reversible error. Our discussion of these does not establish new rules of law, alter or modify an existing rule, involve a legal issue of continuing public interest, or criticize existing law. Therefore, our disposition of the balance of defendant's assignments of error will be set forth in an unpublished, but publically recorded, appendix to this opinion.
*869 The defendant's conviction and sentence are affirmed.
AFFIRMED.
CALOGERO, J., concurs.
WATSON, J., concurs in the result.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
I agree that the inculpatory statement made by the defendant does not form part of the res gestae of the charged offense. However, I do not think that its introduction without a prior warning by the prosecution constituted harmless error. This case differs substantially from State v. Gautreaux, 377 So.2d 289, 291 (La. 1979). In Gautreaux, the statement introduced merely confirmed what other eyewitnesses had personally observed and testified to that the defendant had participated in the fatal attack upon the victim. In the present case, the witnesses were unable to testify that the defendant participated in the fatal attack. They could only testify that he participated in the preliminary assault. This fact makes the inculpatory statement a critical piece of evidence in the state's case against defendant. Without prior notice, it should not have been introduced. La.Code Crim.P. art. 768.
NOTES
[*] Judges Charles R. Ward, Jr., William H. Byrnes, III and David R.M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices pro tempore, joined by Chief Justice Dixon, and Associate Justices Calogero, Dennis and Watson.
[1] Defendant's other contentions lack any arguable merit and are treated in an unpublished appendix which is attached to this opinion and is made part of the official record in this case.