517 So.2d 1151 (1987)
STATE of Louisiana
v.
Nolan GRANT, Jr.
No. 87-KA-468.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
*1153 Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant.
Dorothy A. Pendergast, Asst. Dist. Atty., Research & Appeals, Gretna, for the State.
Before KLIEBERT, GRISBAUM and WICKER, JJ.
WICKER, Judge.
Nolan Grant, Jr. defendant, was indicted by the grand jury with the second degree murder of Bernadette Ursin (Ursin) on or about November 13, 1985 in violation of L.S.A.-R.S. 14:30.1. The defendant was subsequently found to be legally sane and competent to stand trial. On January 8, 1987, after a three-day trial, the jury found him guilty as charged. On January 28, 1987 he was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Defendant now appeals. We affirm.
The testimony at trial set out the following: Tyronda Fisher testified that during the evening hours of November 12, 1985, the defendant went to her house looking for Ursin. When informed that Ursin was not there, the defendant stated, "I'm going to get the b_____." Paulette Collor testified that on the night before the shooting she heard the defendant ask two men whether they had seen Ursin. The defendant stated that he was "going to kill the b_____."
Lucille Arlington, Ursin's aunt, testified that Ursin arrived at her home followed by the defendant. Ursin asked her aunt to "make" the defendant leave her alone. The aunt testified that she asked the defendant to get out of her yard.
Ursin later spoke to Helen Johnson (Johnson) by telephone. Johnson testified that Ursin sounded scared, stating that she and the defendant had broken up and that he (the defendant) threatened to "get her." Ursin also stated that she had seen the defendant that evening and had run away from him.
During the morning of November 13, 1985, the defendant and Ursin were walking to Bunche Career Center, a school located in Jefferson Parish. Tara White (White) testified that she engaged in conversation with them. As White walked away she heard the defendant say "I'm not through with you yet. I'm going to get you." Thereafter, White asked the defendant whether he would "fight a girl" to which the defendant replied, "Yeah, I'll tear her up."
Barbara Spiegel (Spiegel) testified that on November 13, 1985 she arrived at her office in the career center between 7:15 and 7:30 a.m. She saw two people, one of whom was the defendant, in a grassy area by the parking lot. One person was lying in the grass with his/her knees up. The other individual, who was identified as the defendant at trial, was crouched over the first person. When the defendant saw Spiegel, he told her to call an ambulance. When asked what had happened, he replied, "she fell out."
James Howard (Howard), the school's principal, testified that he was inside the career center on the date of the incident. After hearing from Spiegal regarding the incident, he went to the defendant. As he approached, he recognized the individual who was lying on the ground (Ursin) as a student at the center. He noted a small wound in the back of her head. The defendant *1154 told Howard that Ursin had fallen while running from him. Howard told his secretary to call an ambulance.
When the ambulance arrived Paul Quarrella (Quarrella), the EMT, spoke to the defendant. The defendant related to Quarrella that Ursin had fallen off a bicycle. Ursin was transported to East Jefferson Hospital where she died.
Dr. Alvaro Hunt (Hunt), a pathologist, testified that he performed the autopsy. The cause of death was a gunshot wound to the back of the head. Hunt removed a bullet from Ursin's brain. He stated that the gun had been fired from a distance of 1-20 inches.
Detective Curtis Snow (Snow) was dispatched to the hospital. He learned the defendant's name from the victim's father.
Detectives Vincent Lamia (Lamia) and Bernard Wortmann (Wortmann) were sent to the defendant's house where he was subsequently arrested. After giving conflicting statements, the defendant admitted to shooting the victim. He also directed the officers to another house where he left the gun used in the shooting.
Joseph Deidrich (Deidrich), a crime scene technician, was contacted. He seized the gun. Louise Braun (Braun), a general criminologist, performed tests and determined that the bullet taken from the victim's head was fired from the gun Deidrich seized.
Richard Stutson, Jr. (Stutson), a friend of the defendant's, testified that the defendant came to his house on the date of the incident. After initially telling Stutston that the victim had fallen, hitting her head, he later admitted that he had shot her.
Wilfred Joseph (Joseph) was approached by the defendant on the day before the victim's death. The defendant asked Joseph to get him a gun and bullets. Joseph stole a gun and six bullets from a house in which he was working and gave these to the defendant.
The defendant's mother, Gloria Grant, testified that during the months prior to the shooting, the victim called the defendant each day. Ursin was also at her home with the defendant on the day before her death.
The defendant's sister, Virginia Grant, testified that on the night before the shooting, the defendant was at their home at 9:00 p.m. and did not leave for the remainder of the evening.
Appellant now assigns the following errors:
(1) That the trial court erred in allowing into evidence inculpatory statements made by appellant which statements were not revealed in discovery nor by way of notice under L.S.A.-C.Cr.Proc. Art. 768;
(2) That the trial court's charge on reasonable doubt was so misleading as to constitute reversible error, and
(3) Any and all errors patent on the face of the record.
ASSIGNMENT OF ERROR # 1:
The defendant asserts that the State failed to give notice of three statements made by him (the defendant) to three of the State's witnesses. These statements were made by the defendant to the witnesses after the defendant shot the victim. Spiegel, upon her arrival at the school, was told by the defendant that the victim "fell out." Shortly thereafter, Grant told Howard that the victim "had fallen running away from him." When Quarella responded to the call the defendant told him that the victim "fell off a bike."
L.S.A.-C.Cr.Proc. Art. 716(B) allows for the pre-trial discovery of any statement made by the defendant:
Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
Although the State argues that with regard to the statement made by Quarella, the defendant did not properly object during *1155 the trial, and thus did not preserve the issue for appeal, we disagree. Defense counsel did object when the State asked Quarella if the defendant made any comments. He objected on the basis that the statements were inculpatory and that no advance notice was given. Defense counsel again reurged the objection when Quarella was asked to give the particular statement. Therefore, the issue with regard to Quarella was preserved on appeal.
The purpose of such notice is to avoid surprise and to allow adequate time for preparation of a defense. State v. Knapper, 458 So.2d 1284 (La.1984); State v. Parker, 436 So.2d 495 (La.1983); State ex rel Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Billiot, 421 So.2d 864 (La.1982); State v. Russell, 416 So.2d 1283 (La.1982), cert. den. Russell v. Louisiana, 459 U.S. 974, 103 S.Ct. 309, 74 L.Ed.2d 288 (1982). The defendant should be given a fair opportunity to plan or present his defense in light of the damaging statement. Billiot, supra; State v. Turner, 337 So.2d 455 (La.1976).
The defendant in this case specifically requested discovery of oral statements made by him (the defendant). Although the State did inform the defendant of some of the statements made by him (the defendant) which it would use at trial, it did not inform him of three statements to Spiegel, Howard and Quarrella in which the defendant stated that the victim had fallen.
We note, however, that the introduction of the defendant's statements in violation of the discovery articles will mandate a reversal only if the defendant is prejudiced by the failure to disclose. State v. Hooks, 421 So.2d 880 (La.1982); State v. Mitchell, 412 So.2d 1042 (La.1982).
Also, when substantial compliance with L.S.A.-C.Cr.Proc. Art. 768's purpose has been met through other pre-trial pleadings, the failure of the State to present notice will not bar introduction of the statement. State v. Jackson, 450 So.2d 621 (La.1984); State v. Sneed, 316 So.2d 372 (La.1975).
The record reveals that the trial court notified the defense that the defendant made statements to Howard and Spiegel at the motion to suppress hearing held the day prior to trial. Also, the State notified the defendant in writing by its notice of intention to use a transcribed taped statement as well as other inconsistent statements made by defendant to law enforcement officers regarding how the victim died. Thus, as in Russell, supra the defendant through the motion to suppress and other discovery motions was sufficiently apprised of the existence of the statements and cannot complain of surprise. Thus, no prejudice could be shown by the defendant.
The defendant contends that the statements are inculpatory since they explained the cause of the victim's injuries and thus conflict with the defendant's later statements admitting that he shot her.
When inculpatory statements made by a defendant to other parties have not been provided to the defense through pre-trial discovery, the State is required to give notice of such statements. L.S.A.-C.Cr. Proc. Art. 768. Article 768 provides:
Unless the defendant has been granted pretrial discovery, if the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to hearing the state's opening argument. If it fails to do so a confession or inculpatory statement shall not be admissible in evidence.
An inculpatory statement is an out-of-court statement made by the defendant after the commission of a crime, admitting "a fact, circumstances, or involvement which tends to establish guilt or from which guilt may be inferred." State v. Quimby, 419 So.2d 951, 956 (La.1982). If the State is in possession of an inculpatory statement, which it intends to use at trial, it must inform the defendant of the existence, but not the precise substance, of the statement. State v. Mitchell, 437 So.2d 264 (La.1983); State v. Quincy, 363 So.2d 647 (La.1978).
The statements described above do not tend to establish guilt so as to be *1156 considered inculpatory. Quimby, supra. The defendant testified at trial. He did not deny shooting the victim, nor did he deny his presence at the scene. The issues at trial were whether the defendant acted in "sudden heat of passion" so as to be guilty of the lesser crime of manslaughter, L.S. A.-R.S. 14:31, or with "such disregard of the interests of others" so as to be guilty of the lesser crime of negligent homicide, L.S.A.-R.S. 14:12; 14:32. The statements did not amount to evidence which would tend to establish that the defendant had the specific intent to kill, a necessary element of second degree murder. L.S.A.-R.S. 14:30.1.
Even assuming that the statements were inculpatory and erroneously admitted into evidence, reversal of the defendant's conviction is not required since the error is harmless. Likewise, statements admitted into evidence without prior discovery under L.S.A.-C.Cr.Proc. art. 716(B) will not constitute reversible error if harmless. In this case, given the defendant's confession that he shot the victim and the testimony of the witnesses who heard the defendant make threatening remarks toward the victim, made both in and out of her presence, and the day before and the day after the shooting, it is unlikely that the statements made after the shooting to the effect that the victim fell and hurt herself contributed to the verdict. We conclude that the error was harmless beyond a reasonable doubt. L.S.A.-C.Cr.Proc. Art. 921; State v. Williams, 416 So.2d 914 (La.1982); State v. Slate, 440 So.2d 191 (La.App. 3rd Cir.1983).
Furthermore, the State is not required to give notice pursuant to L.S.A.-C. Cr.Proc. Art. 768 of inculpatory statements which are determined to be res gestae. State v. Barnes, 414 So.2d 711 (La.1982); State v. Kimble, 407 So.2d 693 (La.1981); L.S.A.-R.S. 15:447-48.
It was shortly after he had shot the victim that Grant spoke to Spiegel, Howard and Quarella. He was with the victim from the moment he shot her until she was transported to the hospital. The statements were spontaneous excited utterances[1] which form one continuous transaction. Barnes, supra; Kimble, supra; L.S. A.-R.S. 15:447-48. Thus the statements, even if inculpatory constitute res gestae and are normally admissible regardless of who said them. Barnes, supra; Kimble, supra; L.S.A.-R.S. 15:447-48.
Accordingly, we find that this assignment lacks merit.
ASSIGNMENT OF ERROR # 2:
Defendant contends that the portion of the jury charge which defined a reasonable doubt as "one found upon a real, tangible, substantial basis and not upon mere caprice, fancy, or conjecture" was likely to mislead or confuse the jury as to the meaning of reasonable doubt. Thus, he asserts that the giving of that instruction constituted reversible error.
In addition, the defendant also contends that the trial court erred in failing to give an exact reading of L.S.A.-C.Cr.Proc. Art. 804 and therefore committed reversible error.
Despite defendant's timely objection, the following charge was given to the jury immediately prior to deliberation:
A person accused of a crime is presumed by law to be innocent until each element of the crime, necessary to constitute guilt, is proven beyond a reasonable doubt. This doubt must be a reasonable, one, that is, one found upon a real, tangible substantial basis and not upon mere caprice, fancy or conjecture.

It is the duty of the jury, in considering the evidence and in applying to that evidence the law as given by the court, to *1157 give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence in the case; and
It is the duty of the jury if not convinced of the guilt of a defendant beyond a reasonable doubt, to find him not guilty. (emphasis supplied)
The instruction is a verbatim reading of the instruction required by L.S.A.-C.Cr.Proc. Art. 804. However, it additionally adds a definition of "reasonable doubt," which "[t]he court may, but is not required to [do]." L.S.A.-C.Cr.Proc. Art. 804. The threshold issue is therefore whether the definition used was so likely to mislead the jury as to result in reversible error.
Defendant argues that in considering a similar charge, the Louisiana Supreme Court held that charge so misleading as to constitute reversible error. State v. McDaniel, 410 So.2d 754, 756 (La.1982). However, the jury charge given in the present case is distinguishable from that given in McDaniel. In the McDaniel charge the jury was instructed that the reasonable doubt "must be one that would make [them] feel morally uncertain as to the defendant's guilt." Id. at 756. The McDaniel court found that the phrase "morally uncertain" was misleading so as to constitute reversible error.
In addition, the McDaniel court found that the jury was also erroneously instructed that it could not go beyond the evidence to seek for doubts. The charge in the instant case does not have these defects.
More importantly, the jury charge in the instant case has been upheld in two cases considering almost identical wording. State v. Rodney, 459 So.2d 669 (La.App. 4th Cir.1984) and State v. Augustine, 482 So.2d 150 (La.App. 4th Cir.1986). Additionally, a jury charge is not incorrect when taken as a whole, is such that a reasonable person of ordinary intelligence would have no problem in understanding the definition of reasonable doubt. State v. Taylor, 410 So.2d 224 (La.1982).
We conclude that the jury charge in this case is not misleading so as to constitute reversible error. Accordingly, this assignment lacks merit.
ASSIGNMENT OF ERROR # 3:
Also assigned as error are any and all errors patent on the face of the record. L.S.A.-C.Cr.Proc. Art. 920 provides "the following matters and no other shall be considered on appeal: (1) An error designated in the assignments of error; and (2) An error that is discoverable by a mere inspection of pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Gaines, 508 So.2d 1017 (La.App. 5th Cir. 1987).
A review of the record reflects that there are no patent errors. Therefore, this assignment lacks merit.
Accordingly, for the reasons stated defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Recent Louisiana Supreme Court opinions have treated "excited utterance" as a separate exception to hearsay. See State v. Krolowitz, 407 So.2d 1175 (La.1981); State v. Brown, 395 So.2d 1301 (La.1981); State v. Bean, 337 So.2d 496 (La.1976); State v. Smith, 285 So.2d 240 (La.1973). Such consideration of "excited utterance" as a separate exception is consistent with other courts throughout the country which have had difficulty with the use of the term "res gestae" as constituting a blanket exception. Pugh & McClelland, Evidence, 45 La.L.Rev. 309, 316 (1984).

The better approach is "to divide `res gestae' into its several component parts and apply separate rules for each of the components." Id. at 317.