463 So.2d 794 (1985)
STATE of Louisiana, Appellee,
v.
Gary ASHLEY, Appellant.
No. 16592-KA.
Court of Appeal of Louisiana, Second Circuit.
January 23, 1985.
*796 John L. Sheehan, Indigent Defender Office, Ruston, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, T.J. Adkins, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., Ruston, for appellee.
Before HALL, MARVIN and NORRIS, JJ.
*797 NORRIS, Judge.
Defendant Gary Ashley was charged by bill of information with two counts of attempted first degree murder, LSA-R.S. 14:27 and 14:30, and one count of armed robbery, LSA-R.S. 14:64. He pled not guilty and was tried by a twelve-person jury which unanimously found him guilty on two counts of attempted second degree murder, LSA-R.S. 14:30.1 and 14:27, and the armed robbery count. He received consecutive hard labor sentences of twentyfive and twenty years on the attempted second degree murder convictions and twenty-five years without benefit on the armed robbery. Defendant appeals his conviction and sentences, bringing five assignments of error:
(1) The trial court failed to grant a mistrial during the second day of trial after defense counsel received evidence from the state, favorable to the defendant;
(2) The trial court failed to allow defense counsel full cross-examination;
(3) The trial court failed to grant a mistrial when, during closing argument, the prosecutor commented there was no evidence offered to prove that the discharge of the gun was accidental;
(4) The evidence was insufficient to sustain a conviction on all three counts; and
(5) The sentence is excessive because the three prison terms are to run consecutively even though the crimes arose from the same criminal act.

FACTS
On the morning of June 17, 1983, appellant allegedly committed armed robbery of a roadside fish vendor in Grambling. Jerry Smith, the victim, had parked his fish van at the corner of Main and Grambling Streets and was standing at the back of the van; his assistant, Wilbur Douglas, was nearby, fetching a water hose. There were no customers present at 7:30 a.m., but Smith noticed that someone had entered the cab of the van. Smith walked around to the back to ask the intruder what he wanted. Smith later identified the intruder as appellant Gary Ashley. Ashley pulled a gun and said, "I come to get your money." Smith immediately handed Ashley his billfold, which was chained to Smith's clothing. Ashley snatched the billfold loose and looked inside. Much to his dismay, the billfold contained only about fifty dollars. After insisting that Smith must have more money than that, and remarking that he was risking his life "for no more than this," Ashley contemptuously threw some of the bills on the ground and ordered Smith to back up. Smith did so and squatted down to collect the bills. Ashley then fired his pistol at Smith, striking him in the side. Ashley grabbed part of the money on the ground and started running off. Smith, who was not seriously wounded, went back inside the van and grabbed his .25 automatic, intending to shoot the fleeing robber, but the gun misfired. Undaunted, Smith went to the van again and got his other gun. He started chasing Ashley and fired three shots at him.
Wilbur Douglas, the assistant, saw most of what had transpired. He happened to be carrying a shotgun in his truck. He hopped into the truck and joined in the pursuit. Ashley, in full stride, glanced over his shoulder at Douglas and gave fire. Douglas was not hit but returned fire in an effort to bring Ashley to a halt.
Police chief Milton Kelly was nearby when the shooting started. Even though he was off duty, tending business at his dry cleaning shop, he hurried to the scene and found Smith with a hole in his side. Kelly offered him a ride to the hospital. Smith accepted, but they took a detour to join the chase. Smith borrowed Kelly's pistol and exchanged one round with the fleeing Ashley who by now had made his way off the main road and into a wooded area adorned with an old outhouse. Chief Kelly followed. He got out of his car but lost sight of Ashley momentarily. Then he heard a shot from the woods; he stood and waited. Presently Ashley came out with his hands up and surrendered to Kelly, who *798 handcuffed him. Sheriff deputies arrived shortly and took the suspect into custody.
About a dozen citizens, drawn by all the excitement, joined in a search for the gun or the stolen money. Nothing was ever found. At the station, Ashley took a "splotch" test for gunshot residue on his hands; the test was negative.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, appellant contends that the trial court should have granted his motion for a mistrial on the second day of trial. The circumstances were as follows. On the day of the arrest, Deputy Joey Davidson administered a splotch test for gunshot residue. The samples taken were forwarded to the Louisiana Criminalistics Lab for analysis, so results were not immediately available. Defense counsel moved for discovery under LSA-C. Cr.P. arts. 718 and 719, although a copy of this motion is not in the record. R.p. 123. At the August 11 preliminary examination, Deputy Davidson told defense counsel that the results were still not available. Counsel made no further inquiry until the beginning of the second day of trial, after the jury had been selected and sworn (consuming the entire first day) but before the state began its case. On that morning, March 30, 1984, counsel casually asked Deputy Davidson whether he had ever received the test results. The deputy replied he had received them some time ago and they were negative. Before the state began, counsel moved for a mistrial on the basis that the state had failed to comply with its duty of disclosure under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Mistrial is a possible remedy for failure to disclose under LSA-C.Cr.P. art. 729.5 which provides in part:
A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate. [Emphasis added.]
There is no question that the negative results were favorable to defendant, as they would weaken his link with the crimes, along with the fact that the gun was never found, and support his possible defense of mistaken identity. It is also undisputed by the state that defense counsel made an adequate request for discovery of the test results. R.p. 123. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Perkins, 423 So.2d 1103 (La.1982). The standard of materiality is whether the suppressed information "might have affected the outcome of the trial." United States v. Agurs, 427 U.S. at 104, 96 S.Ct. at 2397; State v. Perkins, 423 So.2d at 1108.
It is not necessary, however, to delve into the issue of materiality because the facts of this case are distinguishable from Brady and Perkins in a significant way. In both of those cases, the exculpatory materials had been withheld until after a full trial and conviction. Under those circumstances, there is clearly no alternative to mistrial. But the rights outlined in Brady are not absolutes; neither Brady, nor the fourteenth amendment, mandates mistrial when other, less drastic means are available to protect the defendant from prejudice. We think the alternate remedies contemplated by article 729.5 clearly illustrate that mistrial is not the only possible relief. The trial court has great discretion in granting article 729.5 relief. See State v. Baldwin, 388 So.2d 664 (La.1980), cert. denied 449 U.S. 1103, 101 S.Ct. 901, 66 L.Ed.2d 830 (1981), rehearing denied 450 U.S. 971, 101 S.Ct. 1493, 67 L.Ed.2d 622 (1981); State v. White, 430 So.2d 171 (La. App. 2d Cir.1983), writ denied 433 So.2d 1055 (La.1983). In fact, a recess is approved as a method of allowing defendant the opportunity to present the newly-revealed *799 evidence. See State v. Williams, 448 So.2d 659, 665 (La.1984).
In the instant case, the trial court granted a recess during which counsel telephoned the lab technician. The court offered to let counsel subpoena the technician, but counsel refused. The court further allowed introduction of the evidence, and it was had without state's objection. Then counsel performed a cross-examination of the deputy who administered the test. In closing argument, counsel himself conceded that negative test results did not completely exculpate defendant. R.p. 216. Under these circumstances, the trial court did not err in refusing to grant a mistrial. The trial court took every reasonable precaution to minimize the prejudice to defendant.
Appellant further cites the case of State v. Meshell, 392 So.2d 433 (La.1980), for the proposition that a mistrial must be granted when the undisclosed information would have profoundly changed the defense strategy. In Meshell, the defendant was on trial for cruelty to a juvenile. Counsel had requested "a copy of any record of [defendant's] criminal arrest and conviction that is in [the state's] possession or custody." At the close of state's case, the prosecutor gave counsel a "rap sheet" showing defendant had a prior conviction for child abuse. Defense moved for a mistrial; the motion was denied, and counsel urged on appeal that had he known about the prior record, he would have plea-bargained and never taken the case to trial. The supreme court agreed. In the present case, however, it is difficult to see how an earlier disclosure would have substantially changed the defense strategy. At any rate, counsel has not articulated what he would have done differently. In the first place, defense counsel has demonstrated his lack of concern for the test results by making no further demands until the very morning he was to begin his case. This belies any alleged reliance on those results. Furthermore, defense counsel was permitted the option of getting an independent firearms expert, yet he declined to do so; this, together with his choice not to call the lab technician, shows no intent to explore the technical aspects of the test or exploit them in Ashley's behalf. Finally, defense counsel cross-examined the deputy and we think he would have done so regardless of the timeliness of the disclosure. We will not deprecate the amount of pre-trial preparation necessary in a trial of this kind, nor the surprise factor of late disclosure, but we do not see a substantial alteration of defense strategy for it.
In sum, we find the trial court complied with the provisions of C.Cr.P. art. 729.5 and the due process principles of Brady v. Maryland, supra. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 2
In this assignment, appellant contends he was denied full cross-examination of the state's witnesses. At trial, the state objected to all the questions complained of, on the ground that they sought to establish a condition or state of mind and that such evidence was inadmissible under LSA-C. Cr.P. art. 726, which provides:
A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.
B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.
On appeal, the state observes that in each instance of objectionable questioning, the trial court permitted defense counsel to rephrase or reword his questions. In no *800 instance was an objectionable question completely excluded; in no instance was the question unanswered.
The first contested question was posed to the victim, Jerry Smith, a lay witness, when he was asked whether appellant appeared "intoxicated or on drugs?" R.p. 142. After discussion out of the jury's presence, counsel was permitted to ask, "Did he have any odor about him or smell about him? ... Did you observe his eyes?... Did they appear to be bloodshot or anything of that nature?" R.p. 150.
The next questions were posed to witness Deputy Stone. "How did he appear to you that morning?" R.p. 174. After a short discussion, counsel was permitted to repeat this question, verbatim, and the witness answered.
Counsel had the most trouble with Deputy Davidson, who administered the splotch test. "Did he appear intoxicated?" was recast as, "You indicated he appeared to be incoherent at times?" R.p. 186, 187. "Based on your observations, do you have any opinion as to what would have caused his being incoherent at the time?" was allowed over objection. R.p. 187. The witness replied, "... he could have been under the influence of some type of drug or something." R.p. 187-188. The state stipulated to the witness's ability to discern whether someone had been taking drugs. Defense counsel then attempted to impeach the witness by referring to a prior statement made at the motion to suppress. Deputy Davidson said, "I do remember asking him several questions but I don't recall what his answer was, if in fact [he] gave an answer." R.p. 190. "At that time, you did indicate that Mr. Ashley did tell you that he had taken some pills. Would that statement be correct? A. Yes sir, if I said it then, then it would be." R.p. 190.
This synopsis of the contested cross-examination shows the prosecutor was correct in objecting to the questions under article 726. See State v. Gipson, 427 So.2d 1293 (La.App. 2d Cir.1983); State v. Wade, 375 So.2d 97 (La.1977), cert. denied 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 249 (1980). The trial court nevertheless gave counsel considerable latitude in pursuing his questioning. This is within the trial court's discretion. State v. Nero, 319 So.2d 303 (La.1975). Counsel was in fact permitted to reword the questions and, in one instance, to repeat a question after objection. We think this satisfies appellant's right of cross-examination. See State v. Toomer, 395 So.2d 1320, 1333 (La.1981).
Appellant further contends, under Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), that "denial of effective cross-examination [is] constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." 415 U.S. at 316, 94 S.Ct. at 1110. In Davis, the Supreme Court elaborated:
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. [415 U.S. at 316, 94 S.Ct. at 1110]
Counsel was allowed to introduce Deputy Davidson's prior statement at the motion to suppress for impeachment purposes. With this and the admission of questions about defendant's physical condition, we do not see any denial of defendant's sixth amendment right.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 3
In this assignment, appellant claims the prosecutor commented to the jury on appellant's failure to testify in his own defense. In his closing statement, the assistant district attorney was anticipating an argument that the bullet that hit Jerry Smith was accidentally discharged. He said, "He shot him during the robbery. Well I suppose that could be accidental but I didn't *801 see any evidence of it being accidental." R.p. 208.
Counsel objected on the basis of LSA-C. Cr.P. art. 770, which provides in part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(3) The failure of the defendant to testify in his own defense;
* * * * * *
See also Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); USCA-Const. amds. v, xiv.
The prosecutor argued, and the trial court accepted, that he was merely talking about the evidence as a whole. The motion was denied.
Under article 770, a mistrial is the mandatory remedy when the prosecutor refers directly or indirectly to the defendant's failure to testify in his own defense. When, however, a contested remark does not fall precisely under the proscription of article 770, courts apply a different standard. See State v. Frank, 344 So.2d 1039 (La.1977). Thus a remark may inferentially refer to defendant's failure to testify, without automatically requiring a mistrial. In the case of an inferential statement, we can find reversible error only if the overall intent of the remark was to focus attention on the failure to testify. State v. Frank, supra; State v. Reed, 284 So.2d 574 (La. 1973); State v. Bentley, 219 La. 893, 54 So.2d 137 (1951).
In the instant case, the prosecutor only said he saw "no evidence" of an accidental shooting. The context of the remark is crucial. It came in the middle of an explanation of how the jury could find the defendant guilty of the lesser included offense of attempted manslaughter or aggravated battery. The argument made no reference to defendant. The purpose was not to accuse the defendant by his silence, and we do not think the jury was improperly influenced by it. See State v. Dupre, 408 So.2d 1229 (La.1982). Under these circumstances, the remark does not focus attention on or exploit defendant's failure to testify.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 4
Appellant contends the evidence presented at trial was insufficient to sustain a conviction on all three counts. He claims that under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), no rational trier of fact, reviewing the evidence in light most favorable to the prosecution, could have found him guilty beyond a reasonable doubt. The due process clause of the fourteenth amendment requires us to determine whether the evidence is minimally sufficient. USCA-Const. amd. xiv; State v. Graham, 422 So.2d 123 (La.1982).
The evidence on which the convictions were based has already been outlined in the narrative of facts, but for purposes of emphasis we will mention the particular facts appellant asserts in brief:
Count 1, attempted second degree murder of Jerry Smith: the alleged shooting occurred at such a close range that appellant could have killed Smith easily, had that been his intent; since Smith received only a superficial wound, intent to inflict great bodily harm cannot be inferred.
Count 2, attempted second degree murder of Wilbur Douglas: since none of appellant's shots hit either Douglas or his car, intent to inflict great bodily harm cannot be inferred; moreover, Douglas fired at appellant first, thus excusing the return fire as self-defense.[1]

*802 Count 3, armed robbery of Jerry Smith: the negative results of the powder test, coupled with the fact that the alleged gun was never found, negate the use of a "dangerous weapon," as essential element of R.S. 14:64.
Discussion: Count 3 is not a situation envisioned by State v. Sutton, 436 So.2d 471 (La.1983). Sutton announces a standard of review in cases of conflicting direct evidence. Appellant is not asserting direct evidence in his behalf; rather, he brings negative evidence, the absence of a weapon and the absence of gunpowder on his hands. The state provided direct testimony from the victim and an eyewitness. LSA-R.S. 15:440 provides:
Positive testimony on a given point must be given greater weight than negative testimony on the same point.
Applying this standard and Jackson v. Virginia, we conclude the evidence supports the conviction in Count 3.
Count 1 is supported by reasonable inferences of an intent to kill or inflict great bodily harm. Both R.S. 14:27 and 14:30.1 require that the offender have "specific intent," which is defined as the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10. Though intent is a fact, it need not be proved as a fact. It may be inferred from the circumstances of the transaction. LSA-R.S. 15:445; State v. Kahey, 436 So.2d 475 (La.1983); State v. Graham, 420 So.2d 1126 (La.1982). In the instant case, despite the superficiality of the wound, appellant drew a gun on Smith at close range, aimed and fired. He was angry at Smith for not giving him more money. Immediately afterwards, appellant fled. From these circumstances, the jury could infer specific intent to kill or inflict great bodily harm. See State v. Lee, 275 So.2d 757 (La.1973); State v. Noble, 425 So.2d 734 (La.1983); State in the Interest of Aaron, 405 So.2d 1194 (La.App. 1st Cir.1981). The evidence is sufficient to support the conviction in Count 1.
In Count 2, appellant alleges Douglas fired at him first. This is unsupported by the record, where Douglas testified he fired only after Ashley had fired first. R.p. 156. Viewing this testimony in light most favorable to the prosecution, it is clear that appellant started the "difficulty" and gave fire in flight; thus he cannot claim self-defense. LSA-R.S. 14:21. Moreover, appellant had just committed a robbery and was eager not to be caught. Douglas's pursuit endangered his safe escape. From this, the requisite intent can be inferred. R.S. 15:445. Then appellant performed an overt act by firing at Douglas. This satisfies both requirements for an attempt. R.S. 14:27. The evidence supports the conviction in Count 2.
For these reasons, assignment of error No. 4 lacks merit.

ASSIGNMENT OF ERROR NO. 5
Appellant claims his sentence is excessive because it imposes consecutive prison terms for offenses that arose from the same act or transaction. LSA-C.Cr.P. art. 883 provides in part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.
Thus there is a presumption of concurrent sentences for same-transaction crimes. In order to rebut the presumption without an abuse of discretion, the trial court must "expressly direct" consecutive sentences and explain the reasons. State v. Gage, 399 So.2d 1174 (La.1981). Consecutive sentences are not automatically excessive if the trial court considers other appropriate factors in imposing sentence. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980). Some of these factors *803 include defendant's first-offender status, State v. Ortego, supra; dangerousness of the offense, State v. Underwood, 353 So.2d 1013 (La.1978); harm done to the victim, State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ denied 435 So.2d 433 (La. 1983); potential for rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983); and the public's safety, State v. Underwood, supra.
The trial court, cognizant of its duty under article 883, expressly directed consecutive sentences. R.p. 251. He also mentioned the factors counseling consecutive prison terms. These included appellant's extensive criminal history, the likelihood of continued crime, and the need for a custodial environment. R.p. 249. The trial court emphasized the seriousness of three offenses committed with a firearm. R.p. 249. The trial court also stated that since the victim in the second attempt charge was not injured, the sentence on that charge should be lighter. R.p. 249, 251.
In sum, we find the trial court complied with the requirement of article 883 and enunciated the appropriate factors in imposing consecutive sentences. We are unable to find any manifest abuse of discretion. State v. Molinario, 400 So.2d 596 (La.1981).
Finally, we address the question of whether the sentences imposed were excessive. A sentence within statutory limits may still be constitutionally excessive. LSA-Const. Art. 1, § 20; State v. Sepulvado, 367 So.2d 762 (La.1979). The trial court must comply with the mandatory guidelines of LSA-C.Cr.P. Art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and their factual bases. State v. Jones, 381 So.2d 416 (La. 1980). It is axiomatic that the trial court has great discretion in imposing sentences and we will not overturn one absent a clear abuse of this wide discretion. State v. Trahan, 425 So.2d 1222 (La.1983).
In the instant case, the trial court followed the guidelines of 894.1 very comprehensively, item-by-item. He summarized appellant's criminal record, which has averaged one arrest per year since 1974, including one prior felony conviction. R.p. 248, 249. He cited appellant's need of correctional treatment, given his tendency to commit crime. R.p. 149. He stressed the seriousness of the offenses and the possibility that a lighter sentence would deprecate that seriousness. R.p. 250.
Considering the mitigating factors, the trial court found that none of them applied. He noted especially the extensive past criminal and juvenile record, the gravity of the offenses and the total lack of provocation. We conclude the trial court adequately complied with article 894.1.
Attempted second degree murder carries a maximum sentence of fifty years at hard labor. Appellant received sentences of twenty-five and twenty years, about half of his total exposure. Armed robbery carries a maximum sentence of ninety-nine years at hard labor, without benefit. Appellant received twenty-five years, slightly more than one-fourth the maximum. The total sentence of seventy years, though long, is far from needless and purposeless, and will eliminate any further opportunity to commit crime in the future. It is commensurate with the severity of the offense and does not shock our sense of justice. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Bosley, 454 So.2d 1245 (La.App. 2d Cir. 1984).
Accordingly, the sentences are not excessive and this assignment of error is without merit.

CONCLUSION
For the reasons expressed, appellant's convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] In his summation at trial, defense counsel conceded defendant could not claim self-defense. R.p. 218. By claiming it now, he undermines his argument in Count 3 that there was no gun. He also undermines his defense theory at trial, where he argued Ashley fired not with intent to kill or inflict great bodily harm, but rather with intent to arrest Douglas's pursuit.